132 N.J. Super. 511 (1975)
334 A.2d 354
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ANTHONY LOUIS MARCHITTO, JR., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 10, 1975.
Decided February 27, 1975.
*512 Before Judges LEONARD, SEIDMAN and BISCHOFF.
*513 Messrs Boffa & Willis, attorneys for appellant (Mrs. Peter R. Willis, of counsel and on the brief).
Mr. William F. Hyland, Attorney General of New Jersey, attorney for respondent (Mr. Marc J. Friedman, Deputy Attorney General, on the brief).
PER CURIAM.
A jury convicted defendant of (1) possession of a controlled dangerous substance (N.J.S.A. 24:21-20), and (2) possession of a controlled dangerous substance with intent to distribute the same (N.J.S.A. 24:21-19(a) (1)). His sole contentions on appeal are that (1) the warrantless search and seizure involving his automobile violated his constitutional rights, and (2) the trial judge should have interrogated a juror who made a remark to defense counsel outside the courtroom, in order to ascertain whether there was bias or prejudice.
We perceive no merit in the first point. Our careful review of the record satisfies us that the trial judge correctly denied defendant's pretrial motion to suppress evidence.
The State's proofs on the motion showed that on the basis of information from a reliable informant that a car whose occupants included defendant would be returning from New York with drugs in it, Jersey City police officers established a surveillance at the New Jersey exit from the Holland Tunnel. The vehicle described by the informant emerged from the tunnel and was followed for a distance until the police stopped it, identified themselves, and requested the driver, one Freddie Lee Brown, to step out and produce his license and registration. As Brown left the car a detective observed a piece of tin foil sticking out from the carpet. Because of its appearance and based on his experience that narcotics were commonly packaged in that way, he seized it. His examination of it uncovered four large glassine bags containing a white powder which a field test performed at the police precinct indicated to be an opium derivative.
*514 Defendant argues that no reason existed for stopping the vehicle in question other than the suspicion, based upon the information received, that the occupants would be in possession of narcotics. He claims that there was no evidence that the vehicle was in violation of any provision of the Motor Vehicle Act. He says further that the search and seizure were not made incidental to a lawful arrest, and that there was enough time for a search warrant to have been obtained after the informant gave the police the details which led ultimately to the arrest of defendant and his companions.
Police may rightfully stop a motor vehicle at random and demand production of the operator's license and registration. State v. Gray, 59 N.J. 563, 567; N.J.S.A. 39:3-29. Here, moreover, by virtue of the detailed and reliable information they had received concerning the possible presence of narcotics in the car, the police had additional cause to stop the vehicle and ask the operator for his credentials. Once the car was stopped, the piece of tin foil came into plain view. To a police officer trained in the detection and prevention of crime, in this case particularly in the area of narcotics, it denoted a commonly used receptacle for packets of drugs. The detective here was thus justified in picking it up to examine its contents. In the circumstances we think the detective acted with probable cause and the contraband seized was not the product of an illegal search and seizure. Further, because of the exigencies of the situation, we do not believe that it would have been feasible for the police officers to have obtained a search warrant during the time they maintained a watch for the suspected automobile. Finally, the seizure and the arrest being sufficiently contemporaneous so as to constitute connected units of an integrated incident, it did not matter that in precise point of time the arrest did not precede the search. State v. Doyle, 42 N.J. 334, 343 (1964).
The remaining assignment of error troubles us. It appears that on the fourth day of trial defense counsel informed the judge of an incident which had occurred during the luncheon *515 recess that day. He said that while he was in the corridor near the elevator one of the jurors "gestured with a little smile," came over and said to him, "I'm surprised at you." He said further that he backed away, indicating to the juror with "my hands over my mouth as if to be quiet." The juror then entered the elevator and left.
Defense counsel requested the trial judge to interrogate the juror to determine what the remark meant and whether it evidenced bias or prejudice against him or defendant. The judge rejected the request, saying, "I do not think it would be appropriate to inquire into what the juror meant." He added that he did not agree with counsel that the remark was entirely uncomplimentary. "In any case," he said, "the guilt or innocence will be determined by the evidence and the law regardless of the juror's reactions to or hindrance of any attorney in the case." He indicated that he would refer to the matter in his charge and then he said:
* * * To inquire into the juror's meaning has some hazards. For one thing, I do not want to single the juror out. I do not want to reprimand the juror, and I think it would be inadvisable to have the jury know about this, this casual incident, which I am sure the juror did not mean in any, did not, I am sure the juror did not intend any wrong by the remark. To highlight it might then provoke a situation where I would have to excuse the juror * * * and I do not want to.
Counsel then expressed the opinion that by the juror's mannerisms and facial expression the remark was antagonistic. The trial judge responded:
I am not denying that, I am assuming that is why, the reason you are concerned about it. What she meant was she suggested that her opinion of, of either you or a defendant's case is not as high as it was earlier in the case. "Oh, I'm surprised at you" at this point.
Counsel's motion for a mistrial was denied. If the trial judge thereafter reminded the jury "not to have any connection with anyone in the case," as he said he would do, the record does not reveal it.
*516 Defendant advances the argument that it need not be demonstrated that the juror's remark was in fact prejudicial. He contends that where the record fails to show the reason for the remark because the trial judge declined to interrogate the juror, it will be presumed to be prejudicial. Although the cases on which he relies, State v. Auld, 2 N.J. 426, 432 (1949), and Guzzi v. Jersey Central Power & Light Co., 36 N.J. Super. 255, 264 (App. Div. 1955), certif. den. 19 N.J. 339 (1955), are factually distinguishable in that they involve communications between the judge and jury in the absence of counsel, they do stand for the principle that in such case, if the record does not disclose whether the communication was prejudicial, it will be presumed to be so and constitute cause for a reversal of the judgment. That principle, it seems to us, is pertinent here.
It is axiomatic that the right to trial by a fair and impartial jury is a fundamental one and should always be guarded by the court. Turner v. State of Louisiana, 379 U.S. 466, 471-472, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965). See State v. Levitt, 36 N.J. 266, 270 (1961).
We cannot speculate on what the juror meant by the remark addressed to defense counsel. While we are unable to say that on its face it indicated hostility, prejudice, bias or a fixed opinion of the case, it was clearly not complimentary, as the trial judge himself acknowledged at one point in the colloquy. Defense counsel's request that the court inquire into the matter was not unreasonable in the circumstances. Such investigation might well have satisfied the court and counsel that the import of the comment was not such as to prejudice defendant's right to a fair trial. Cf. Lawrence v. Tandy & Allen, 14 N.J. 1, 11 (1953); Hansson v. Catalytic Construction Co., 43 N.J. Super. 23, 31 (App. Div. 1956). The trial judge's hesitancy to single out the juror was not a sufficient response to the request, particularly since he tended to agree with counsel that the remark may have been derogatory. If he did not think it advisable to interrogate the juror, he should at least have taken the alternative *517 course of simply quietly excusing the juror from further participation in the case, there being more than 12 jurors at the time. He did neither, and his failure to pursue one of those available courses of action was, in our view, a mistaken exercise of discretion on his part.
There is nothing in the record before us from which we can be certain that the juror's statement was so innocuous that defendant's right to a fair trial could not have been prejudiced thereby. We are left in a state in which we cannot tell one way or the other. In the circumstances, we have no choice but to presume that the remark was prejudicial, thus requiring a reversal of the judgment of conviction.
Reversed and remanded for a new trial.