162 N.J. Super. 290 (1978)
392 A.2d 672
STATE OF NEW JERSEY, PLAINTIFF,
v.
RAYMOND MARSH AND MAURICE E. WILLIAMS, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided August 14, 1978.
*294 Mr. John H. Stamler, Union County Prosecutor, for the State (Mr. Gerald M. Compeau, Jr., Assistant Prosecutor, appearing).
Mr. Francis X. Dorrity, attorney for defendant Marsh.
Mr. S. David Levy, Deputy Public Defender, for defendant Williams (Mr. Frank R. Krack, Assistant Deputy Public Defender, appearing).
BRODY, J.C.C. (temporarily assigned).
Exigent circumstances usually excuse the failure to obtain a search warrant. But what of the case where police have probable cause and are able to predict the exigency well in advance of their warrantless search? These motions to suppress require dealing with some of the problems raised by that question.
On July 6, 1977 at 10 A.M. Elizabeth Desk Sergeant Leonard Giacalone received an anonymous telephone tip describing a theft in progress. The caller claimed to be watching warehouse employees unlawfully removing cartons of shoes from the building and loading them into a private van parked in the warehouse lot. He described the van as a tan vehicle bearing New York license plate number 638-7AY and stated that the loaded van would be driven out of the lot at about 3 P.M. that day. Then, advising Giacalone not to trace the call or he would "blow the whole thing," the caller hung up.
When the call came in, Detective Warren White and his partner were patrolling the neighborhood of the warehouse in an unmarked car available, according to White's testimony, *295 for any assignment from Giacalone. The municipal court judge was on the bench in a room adjoining the police desk. Giacalone disturbed neither the detectives nor the judge over the call. Instead, he asked his dispatcher to determine from a computer whether the license number matched the description of the van. When the dispatcher replied that the computer was broken indefinitely, Giacalone did not press the inquiry and did nothing more for several hours.
About 1:45 P.M. Giacalone summoned White and his partner to headquarters. When they arrived he advised them of the call and sent them to the warehouse with instructions to "intercept" the van when it left the lot. This instruction was intended and understood to mean that White should stop and search the van as soon as it pulled into the street.
On arriving at the warehouse around 2 P.M. White spotted a van fitting the informant's description. A guard at the lot advised him that it belonged to a truck driver employee who was expected back from the road about 3 P.M. White walked over to the van and tried to open its doors but they were locked. He then looked through a window and saw cargo covered by a quilt. White, who had become familiar with their shape through previous investigations of thefts at the warehouse, thought that shoe cartons may have been under the quilt. He and his partner then waited in their car outside the lot.
The van pulled out about 4:30 P.M. When it turned into the street, the police car blocked its path. White and his partner approached the van with guns drawn, ordered its occupants, the defendants, to step out, and asked the driver whether he had any stolen shoes in the back. The driver replied, "I don't know what's back there." White lifted the quilt, uncovering several cartons of shoes, and then placed defendants under arrest. White testified that he did not believe he had probable cause until he saw what was under the quilt. Defendants move to suppress the cartons of shoes which they are charged with having stolen from the warehouse.
*296 Any number of circumstances prompt law enforcement officers to conduct warrantless searches. Reviewing courts must measure the particular circumstances of a search against evolving interpretations of the Fourth Amendment. Understandably, the results are sometimes difficult to predict. As some police make out the case law, however, one common situation can be counted on to justify a warrantless search: where there is probable cause, a moving motor vehicle can be stopped and searched. This oversimplification of the exigency rule as it applies to motor vehicles leads to the false corollary that once there is probable cause to search a parked vehicle, no warrant is required so long as the search is conducted after the vehicle gets under way.
The starting point, as always, is the Fourth Amendment mandate that a police search must be reasonable and, subject to recognized exceptions, may not be conducted unless a judge authorizes it by issuing a warrant. Coolidge v. New Hampshire, 403 U.S. 443, 454, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The issuing judge not only passes upon probable cause but also fashions in the warrant those particulars relating to its execution that contribute to the reasonableness of the search.
Our fundamental inquiry in considering Fourth Amendment issues is whether or not a search or seizure is reasonable under all the circumstances. The judicial warrant has a significant role to play in that it provides the detached scrutiny of a neutral magistrate * * * Once a lawful search has begun, it is also far more likely that it will not exceed proper bounds when it is done pursuant to a judicial authorization "particularly describing the place to be searched and the persons or things to be seized." Further, a warrant assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search. [United States v. Chadwick, 433 U.S. 1, 9, 97 S.Ct. 2476, 53 L.Ed.2d 538, 546-547 (1977); citations omitted]
One exception to the warrant requirement occurs where police, having probable cause to search, must do so on the spot or lose the opportunity to search at all. Roaden v. Kentucky, 413 U.S. 496, 505, 93 S.Ct. 2796, 37 L.Ed.2d *297 757, 760 (1973). Faced with a moving motor vehicle which they have probable cause to search, police may usually stop and search it without a warrant because of the exigency of its movement and the risks attendant upon its mobility after it has been stopped. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419 (1970). When circumstances first present probable cause moments before the police must either search or lose the opportunity, the lack of a warrant is clearly excused. But when probable cause and exigency do not arise at virtually the same time, police must exercise discretion which, on motion, is subject to judicial review to determine whether the search was "reasonable under all the circumstances"  more particularly, to determine whether once they had probable cause, the police should have obtained a warrant before exigencies compelled the warrantless search.
Where law enforcement officers have squandered an overt opportunity to obtain a warrant antecedent to an otherwise acceptable search (justified by exigent circumstances or incident to a valid arrest), there must be a showing of compelling "countervailing factors" to sustain the constitutionality of the suspect intrusion. * * * [I]f a defendant's allegation of deliberate bypass of a warrant is supported by a finding that a realistic opportunity existed to procure one, as in this case, the Government must come forward with objective evidence to justify this deviation from normal police procedure. Subjective good faith on the part of the authorities cannot suffice as a complete defense if we are to honor the principle that warrantless searches are per se unreasonable under the Fourth Amendment. Coolidge v. New Hampshire, 403 U.S. 443, 454-455, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); United States v. Lewis, 504 F.2d 92, 100 (6th Cir.1974). We must satisfy ourselves from the facts that the officers conducted themselves reasonably under all of the circumstances and did not gratuitously usurp the role of the impartial magistrate. [United States v. Chuke, 554 F.2d 260, 263-264 (6 Cir.1977); emphasis in original]
The question here is whether, given their awareness that the evidence would not be available after the known deadline, the police should have obtained a warrant before the van moved off.
*298 As a rule, police are not obliged to seek a search warrant as soon as they obtain probable cause. Cardwell v. Lewis, 417 U.S. 583, 595-96, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). There is little point to it; Fourth Amendment rights are generally not thereby jeopardized. Police should be left to strengthen their evidence of probable cause, to gather more trial evidence, to widen their investigation  to do or not do as they please without fear that failure to apply promptly for a warrant will nullify all that follows. See United States v. Ferrara, 539 F.2d 799, 802 (1 Cir.1976). Police must have this freedom to do their job even though in almost every investigation there is the chance that exigent circumstances, not totally unexpected, may develop which will necessitate a warrantless search.
But where police have probable cause, have no reason to believe or do not believe that a judge will disagree, have ample time to obtain a warrant before a known deadline of specifically anticipated exigent circumstances will render the evidence unavailable, and they fail to apply for a warrant, their search based upon that probable cause, despite exigent circumstances, transgresses the Fourth Amendment as an unlawful usurpation of the judicial function to certify the probable cause and authorize the search by the issuance of a warrant.
The first inquiry is when, if ever, the police were first presented with probable cause. If never, the search was unlawful. If too late reasonably to have obtained a warrant, the search was lawful in view of the exigent circumstances. Here neither is the case. Considering the matter as though the probable cause evidence were being presented to me for the issuance of a warrant, I find that the police first had probable cause when the informant told Giacalone his story at 10 A.M.
Because the informant was anonymous, his reliability was not impugned by the receipt or expectation of consideration from the police. State v. Kurland, 130 N.J. Super. 110, 114-15 (App. Div. 1974); State v. Lakomy, 126 N.J. *299 Super. 430, 435 (App. Div. 1974). He had no apparent motive to lie. Truthful informants often, if not usually, prefer to remain anonymous. His information was circumstantially reliable as well: it was not only detailed but a report of ongoing events he claimed to be observing. State v. Kurland, supra, 130 N.J. Super. at 115. A statement made while a declarant was perceiving the event which the statement narrates is considered so inherently reliable as to be admissible at trial as an exception to the hearsay rule. Evid. R. 63(4) (a). His conclusionary statement that the employees were stealing the shoes was adequate to establish probable cause in light of his reliability and the inference of theft arising from the detailed activities he described, even though he did not volunteer more circumstantial evidence to support the element of larcenous intent.
It is one thing to find in retrospect that probable cause existed at 10 A.M. It is quite another to conclude that Giacalone then realized it and should be blamed for not promptly obtaining a warrant from the municipal court judge in the next room. He may not have been thinking of obtaining a warrant, or if he was, he may have thought the evidence inadequate.
Giacalone did know at 10 A.M. from what the informant told him that by 3 P.M. that day the evidence would likely be gone. He believed the informant, as evidenced by his failure to act until 1:45 P.M., barely in time to catch the van before the 3 P.M. deadline. Knowing that any search had to be accomplished within the next five hours and that a judge was at hand, Giacalone, if acting reasonably, should at least have been thinking of whether he had probable cause to obtain a warrant.
Arguably, a fair consideration of the informant's account could have led Giacalone to conclude that it was insufficient to establish probable cause. Giacalone could reasonably have felt that a judge would require confirmation of the anonymous informant's story. In the course of an investigation police should not be required to detect that *300 precise moment when their evidence will tip the scales in favor of probable cause. See United States v. Ferrara, supra, 539 F.2d at 802 (upholding warrantless search made by agents who "were never in a position where they could predict with a reasonable degree of certainty that they would be able to obtain a warrant" and who therefore delayed seeking a warrant "in the hope of increasing the quantum of evidence which they could present to the magistrate.") See also, United States v. Chuke, 554 F.2d at 264 (upholding warrantless search by agents who decided not to seek warrant after consulting counsel who incorrectly advised that they did not have probable cause).
Here, however, the State cannot argue that Giacalone doubted the adequacy of his evidence. He was in fact convinced that the informant's story was sufficient probable cause; without more, he ordered White to stop and search the van. Giacalone's order to intercept was an order to search. Crediting White's testimony that he did not believe he had probable cause until after he lifted the quilt, I must conclude that he lifted the quilt because Giacalone had ordered him to search. This conclusion is bolstered by White's earlier attempt, frustrated by locked doors, to search the van in the lot.
Thus, at 10 A.M. Giacalone knew he had probable cause to search the van, knew the van would be gone after 3 P.M., knew a judge was readily available, and yet did not apply for a warrant. This squandered opportunity to obtain a warrant at 10 A.M. cannot be excused by the exigency which arose after 3 P.M. Here Giacalone deliberately bypassed the warrant requirement. But even if in good faith he and White had not decided to search until it was too late to obtain a warrant, the result would be the same. A reviewing judge should not be called upon to discern such nebulous shifts of mind offered to excuse behavior so demonstrably insensitive to the warrant requirement.
*301 There would be a different result if the search had been predicated upon evidence independent of the probable cause evidence Giacalone had at 10 A.M. Had police investigation produced evidence of probable cause which did not derive from the informant's tip and had exigent circumstances then made it unreasonable for police to obtain a warrant, a warrantless search would have been valid.
[M]erely because the discovery of incriminating evidence was preceded by a violation of the Fourth Amendment, the evidence so uncovered does not thereby become "sacred and inaccessible." Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319 (1920). If, for example, the evidence was obtained from an "independent source" and was not arrived at through the initial illegality, the evidence "may be proved like any others * * *." Id. at 392, 40 S.Ct. at 183. Similarly, if the connection between the discovered evidence and the initial illegality has "become so attenuated as to dissipate the taint * * *," the evidence should not be excluded. Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 268, 84 L.Ed. 307 (1939). In Wong Sun v. United States, supra, the proposition was stated as follows:
We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Maguire, Evidence of Guilt, 221 (1959). [371 U.S. at 487-488, 83 S.Ct. at 417]
Here, there was no rational connection whatsoever between the initial entry, assuming its constitutional infirmity, or defendant's arrest, and the search for and seizure of the evidence. Therefore, the discovery of the evidence was not the result of "exploitation" of a warrantless entry or illegal arrest. [State v. Fenin, 154 N.J. Super. 282, 287-288 (App. Div. 1977) (per curiam)]
In the present case, however, the police did not rely on independently derived information to justify the search, although White's belated investigation of the informant's account did uncover some additional information: Confirmation that the van was in the lot, the guard's statement that it belonged to an employee due back at 3 P.M., White's *302 observation of the quilt-covered cargo, the departure of the van, and the driver's statement that he did not know what was in the van. These additional data cannot be considered as independent bases of probable cause to search because they have little significance apart from the informant's account.
The State made no attempt to justify the search of the van as incident to the defendants' arrest, recognizing that White did not arrest them before the search. He testified that he did not intend to arrest unless the search uncovered the cartons. A warrantless search cannot be incidental to a valid arrest where the police intend merely to detain, not arrest, pending the outcome of the search. State v. Hutchins, 43 N.J. 85, 101 (1964); State v. Hannah, 125 N.J. Super. 290, 294 (App. Div. 1973). In any case, once a reviewing court has found an unlawful bypass of the warrant requirement, absent independent probable cause the search's infirmity cannot be cured even though the search was incident to a valid arrest. Cf. Niro v. United States, 388 F.2d 535 (1 Cir.1968).
The motions are granted.