195 N.J. Super. 49 (1984)
477 A.2d 1272
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
WILLIE FAYE BELL AND RICHARD WILLIAMS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 8, 1984.
Decided April 11, 1984.
*51 Before Judges J.H. COLEMAN and BACHMAN, J.S.C., t/a.
Brian D. Gillet, Assistant Prosecutor, argued the cause for appellant (John H. Stamler, Prosecutor of Union County, attorney; Anthony Martinez, Assistant Prosecutor, of counsel, and on the brief).
James Jukes, Assistant Deputy Public Defender, argued the cause for respondent Willie Faye Bell (Joseph H. Rodriguez, Public Defender, attorney; Edward Kopelson, Assistant Deputy Public Defender, of counsel, and on the brief).
Anthony D. Rinaldo, Jr., argued the cause for respondent Richard Williams (Rinaldo & Rinaldo, attorneys; Anthony D. Rinaldo, Jr., of counsel, and on the brief).
The opinion of the court was delivered by J.H. COLEMAN, J.A.D.
The crucial question raised by this appeal is whether the failure of the police to obtain an anticipatory warrant to search an automobile occupied by defendants constitutes an unreasonable search and seizure. Several items containing heroin and marijuana were seized from the automobile. Both defendants *52 were indicted for possession of heroin contrary to N.J.S.A. 24:21-20a.(1). The trial judge granted defendant's motion to suppress the evidence seized from the interior of the automobile. We granted the State leave to appeal. We now reverse.
The facts pertinent to our decision are not in serious dispute. During the beginning of November, 1981, the Elizabeth Police Department conducted a drug investigation known as Operation Optometrist. The investigation focused on an area generally described as First and Marshall Streets. Reliable informants advised the police that narcotics dealers would drive to New York a couple of times a day to purchase heroin. The informants indicated that a variety of automobiles and drivers were used to go to New York to pick up the heroin; the female in the car would hold the drugs. On November 4, 1981, the police surveillance revealed that two men and a woman left the First and Marshall Street area by car. The informant advised that when they returned they illegally possessed drugs purchased in New York.
On November 5, 1981, the police observed a suspicious Pontiac in the targeted area. The suspicion was aroused by the prior day's activities. They followed that automobile into New York City and observed it park at Amsterdam Avenue and 121st Street. When that automobile reentered Elizabeth, it was stopped and found to contain illegal drugs.
On November 7, 1981, the police conducted a surveillance of the same area. They observed a blue Le Baron containing a male and female leave the area. At approximately 10:30 a.m., Sgt. Kelly and Sgt. Benovitch followed that automobile from First and Marshall Streets onto Routes 1 and 9 north to the city line. The Le Baron proceeded north on Routes 1 and 9 as if it headed for New York City. Sgt. Kelly then returned to Police Headquarters to prepare a team of officers to arrest and search the suspects upon their return to the First and Marshall Street area. Upon Sgt. Kelly's return to Police Headquarters at about 10:45 a.m., he made numerous phone calls. Sgt. Benovitch also *53 went to headquarters, but shortly thereafter he returned to the targeted area to continue working with his informants. As a result of Sgt. Kelly's phone calls, Det. Aspra and Det. Brojanowski responded to Police Headquarters at approximately 11:15-11:30 a.m. They were sent to the Holiday Inn on Route 1 south to conduct a surveillance for the blue Le Baron on its return from New York City. Sgt. Kelly was not able to contact Ptl. Wood and Ptl. McGuire until about 11:30 a.m. Ptl. Wood had to locate a babysitter before he could respond to headquarters. He and Ptl. McGuire reported to headquarters at approximately 12:30 p.m.
Shortly after Patrolmen Wood and McGuire arrived at headquarters, Sgt. Kelly received a radio dispatch that the blue Le Baron occupied by defendants had passed the Holiday Inn checkpoint. Sgt. Kelly then entered a marked patrol car with Patrolmen Wood and McGuire. They proceeded to Fairmont and Jackson Avenues where defendants were stopped at approximately 1:00 p.m. with the assistance of Detectives Aspra and Brojanowski. The Le Baron was therefore away from the City of Elizabeth approximately two to two and one-half hours.
Defendants were ordered to exit from the vehicle. They were placed alongside the passenger side of the vehicle. Patrolmen Wood and McGuire conducted a search of the vehicle. As soon as Ptl. McGuire seized three nickel bags of marijuana from the interior of the vehicle defendants were placed under arrest. Three bags of suspected heroin were also seized from the purse of defendant Bell. Her purse was found either on or under the front seat. A manila envelope suspected of containing a controlled dangerous substance was seized from the glove box. Defendant Bell testified that when she was stopped an officer pointed a gun at her and said "don't move."
The trial judge suppressed the evidence finding that the period of one and one-half to one and three-quarter hours was adequate time for the officers to obtain a search warrant. She placed substantial reliance on the fact that a search warrant *54 was issued at approximately three o'clock that day for Mr. B's Tavern as a result of the same investigation. She found there was probable cause for the issuance of a search warrant when the Le Baron left Elizabeth and proceeded toward New York City. She found that the failure to obtain a warrant made the search and seizure unreasonable. Substantial reliance was placed on State v. Marsh, 162 N.J. Super. 290 (Law Div. 1978), aff'd sub nom. State v. Williams, 168 N.J. Super. 352 (App.Div. 1979).

ANTICIPATORY WARRANTS
The trial judge recognized that probable cause did not suggest that defendants were in possession of contraband or evidence at the time they left the City of Elizabeth. She nonetheless concluded that probable cause existed to believe that when defendants returned from New York, they would be illegally possessing drugs. The information from the informants was sufficiently corroborated by the surveillances to establish the trustworthiness of the informants. We are satisfied that the two-pronged test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) has been satisfied as well as the "totality of circumstances" in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, 550 (1983). Hence the conclusion that probable cause was established is supported by sufficient credible evidence; we find no reason to disturb that finding. State v. Johnson, 42 N.J. 146 (1964).
As previously noted, the defendants were not expected to possess drugs until they returned to Elizabeth from New York City. As such, any search warrant which might have issued would have been based not on present probable cause, but on probable cause that evidence of criminal conduct could be found at a specified future time. This court has previously held that "[t]here is no particular constitutional infirmity in the mere fact *55 that a warrant is sought to search for contraband which has not as yet reached the destination described therein." State v. Mier, 147 N.J. Super. 17, 20 (App.Div. 1977). The question then becomes whether such an anticipatory warrant was required prior to the search in this case. We think not.
It is regarded as both permissible and desirable to obtain anticipatory warrants when time permits. See, e.g., United States ex rel. Beal v. Skaff, 418 F.2d 430 (7th Cir.1969); Johnson v. State, 617 P.2d 1117 (Alaska Sup.Ct. 1980); Alvidres v. Superior Court, 12 Cal. App.3d 575, 90 Cal. Rptr. 682 (Ct. App. 1970); Commonwealth v. Soares, 384 Mass. 149, 424 N.E.2d 221 (Mass.Supr.Jud.Ct. 1981); People v. Glen, 30 N.Y.2d 252, 331 N.Y.S.2d 656, 282 N.E.2d 614 (Ct.App. 1972); State v. Mier, supra. See generally 1 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 3.7(c) (1978 & Supp. 1984). However, it has been well established that there is no requirement that the Government obtains a warrant at the first moment probable cause exists. Cardwell v. Lewis, 417 U.S. 583, 595, 94 S.Ct. 2464, 2471, 41 L.Ed.2d 325 (1974). The touchstone for determining the constitutionality of warrantless searches is one of reasonableness under the circumstances. Delaware v. Prouse, 440 U.S. 648, 653-655, 99 S.Ct. 1391, 1395-96, 59 L.Ed.2d 660 (1979); State v. Bruzzese, 94 N.J. 210, 216-217 (1983).
In ruling to suppress the evidence seized, the trial judge relied on State v. Marsh, supra. We find that the court's reliance on this case was misplaced. In Marsh, the anticipatory warrant problem was not at issue since there was probable cause to believe that the evidence was in defendant's van for at least two and one-half hours prior to the time that alleged exigent circumstances led to the warrantless search. As such, the question in Marsh was simply whether the warrantless search could be upheld where the police had at least two and one-half hours to obtain a warrant based on present probable cause. By contrast, in the present case there was no present probable cause until minutes before the search, when the blue *56 Le Baron was sighted driving back into Elizabeth from New York City. Hence, we find Marsh is not controlling.
In State v. Patterson, 192 Neb. 308, 220 N.W.2d 235 (1974), it was held that an anticipatory warrant was not required because the police were justified in waiting until the drugs were on the premises before conducting the search. At that point exigent circumstances justified the search without a warrant. What the court said there has some bearing on the issues presented here.
The position of the defendants overlooks the obvious fact that if an entry had been made, even with a warrant, prior to the time the heroin was on the premises the whole operation would have been fruitless as far as law enforcement is concerned. The police were fully justified in waiting until they had information which indicated the heroin was on the premises before they completed the affidavit. [220 N.W.2d at 239]
Similarly, in Thomas v. Parett, 524 F.2d 779 (8th Cir.1975), it was observed
The police are not to be faulted for their failure to seek a warrant before 2 P.M. solely on the basis of suspicious circumstances which indicated at most no more than the probability that heroin had recently been in the apartment premises and that at some time in the immediate future more heroin would be brought there and prepared for street sale. The information available to the officers prior to 2 P.M. was not sufficient to support a belief that narcotics were already in the apartment. In our judgment, the police were justified in waiting until additional facts were developed. [Id. at 781]
See also Commonwealth v. Duran, 363 Mass. 229, 293 N.E.2d 285 (1973); State v. Patten, ___ Me. ___, 457 A.2d 806 (1983), upholding warrantless searches where the police failed to obtain anticipatory warrants.
The fact that the police could reasonably foresee or anticipate that defendants would return to Elizabeth in about two hours does not compel a different result in this case. The fact that "the circumstances that furnish probable cause to search a particular automobile for particular articles are most often unforeseeable," Chambers v. Maroney, 399 U.S. 42, 50-51, 90 S.Ct. 1975, 1980-81, 26 L.Ed.2d 419 (1970), does not mean that in all cases where there is foreseeability a warrant must be obtained. We do not read State v. Alston, 88 N.J. 211, 233 (1981) or State v. Ercolano, 79 N.J. 25, 47 (1979) as holding to *57 the contrary. We are not convinced that the standard of reasonableness required the police to interrupt the surveillance in the target area or cease planning to apprehend defendants upon their return from New York City in order to seek a warrant to search a car which would be travelling upon the open highway. The mobility of the vehicle and the apparent lack of manpower bring this case within the automobile exception to the warrant requirement.
The trial judge concluded that there was adequate time to obtain a warrant. Given the total circumstances here presented, we find nothing unreasonable in the failure of the police to obtain a warrant.
... [T]he proper inquiry for determining the constitutionality of a search-and-seizure is whether the conduct of the law enforcement officer who undertook the search was objectively reasonable, without regard to his or her underlying motives or intent. We emphasize that the Fourth Amendment proscribes unreasonable actions, not improper thoughts. In determining whether a police officer's actions are constitutional, we do not rely on the officer's own subjective appraisal, but upon an objective evaluation by a neutral judicial authority. [State v. Bruzzese, 94 N.J. at 219]
Sgt. Kelly stated there was insufficient time to obtain a warrant in view of exigent circumstances. The evidence discloses that Sgt. Kelly was unable to complete the arrangements for a searching party until approximately 12:30 p.m. That was approximately the same time defendants returned from New York City. Sgt. Benovitch was not available to seek a warrant because he had returned to the target area to continue his ongoing investigation of suspected drug trafficking at Mr. B's Tavern. Detectives Aspara and Brojanowski were assigned to the Holiday Inn as "look-out" persons to spot the automobile upon its return. Patrolmen Wood and McGuire did not respond to headquarters until approximately the same time the radio message was received indicating the blue Le Baron had been spotted returning from New York City. In these circumstances, a delay to obtain a search warrant would have resulted in all likelihood in the loss of the evidence. See State v. Martin, 87 N.J. 561, 570 (1981); 2 W. LaFave, supra § 4.1 at 4. Moreover, the deployment of the police force to best serve the public *58 interest is a highly discretionary act which should not be interfered with absent special circumstances not here presented. See generally Suarez v. Dosky, 171 N.J. Super. 1, 8-9 (App.Div. 1979), certif. den. 82 N.J. 300 (1980).
We are therefore persuaded after reviewing the circumstances surrounding the search at issue, that the police did not act unreasonably when they searched defendants' automobile without an anticipatory warrant. Cf. State v. Marchitto, 132 N.J. Super. 511, 513-514 (App.Div. 1975), certif. den. 68 N.J. 163 (1975). The facts presented persuade us that while an anticipatory warrant is permissible, it was not mandated in this case.

SEARCH INCIDENT TO LAWFUL ARREST
It is clear from the evidence that the search and arrest were contemporaneous. Where defendants are searched and arrested all as part of a single uninterrupted transaction, it does not matter whether the arrest precedes the search. See State v. Doyle, 42 N.J. 334, 343 (1964).
We are satisfied from our review of the record that probable cause did exist to believe that at the time the motor vehicle was seen coming back from New York City contraband was contained therein. Hence, there was an articulable and reasonable suspicion for stopping defendants' motor vehicle. Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979); State v. Gervasio, 94 N.J. 23 (1983). Unquestionably, law enforcement officials have a right to order occupants out of a motor vehicle for their own safety. Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). The search and the restriction of defendants' liberty were contemporaneous. Once defendants' liberty was restricted, they were then technically under lawful arrest based on probable cause to believe they were illegally possessing drugs. As an incident to that lawful arrest, the police were allowed to search for evidence on the defendants' person and the interior of the motor vehicle including closed containers such as Bell's purse. New York v. Belton, 453 U.S. 454, 460-461, 101 S.Ct. *59 2860, 2864, 69 L.Ed.2d 768 (1981); State v. Bruzzese, supra at 243 n. 1 (Handler, J., concurring); State v. Esteves, 93 N.J. 498, 506 n. 2 (1983).
For the foregoing reasons, the order suppressing the evidence is hereby reversed.