**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1401-15T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

DEWAYNE T. EARL, a/k/a
DWAYNE . EARL,

    Defendant-Appellant.

_____

Submitted May 17, 2017 — Decided July 17, 2017

Before Judges Carroll and Farrington.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 14-12-3854.

Joseph E. Krakora, Public Defender, attorney for appellant (Michele E. Friedman, Assistant Deputy Public Defender, of counsel and on the brief).

Mary Eva Colalillo, Camden County Prosecutor, attorney for respondent (Jason Magid, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Dwayne T. Earl appeals the denial of his motion to suppress following an evidentiary hearing. We affirm.

On May 21, 2014, in response to two telephone calls from citizens reporting drug distribution, Troopers Joseph Castle and Cunningham[1] responded to the corner of 8th and Walnut Streets in Camden, New Jersey to conduct a surveillance.

At approximately 7:40 a.m. on that date, the troopers conducted surveillance from an unmarked vehicle and observed two African American men on the corner of 8th and Walnut conducting four or five hand-to-hand transactions. Following the transactions, one of the individuals, later identified as Darnel Barnes, took money, walked up to a particular address, knocked on the door and was met by defendant, who took the money and handed the individual a black plastic bag. This occurred more than once in the approximate thirty-minute duration of the surveillance.

Arrest teams were called in, and as they pulled in front of the house, Earl saw them and ran into the house where State troopers observed him throwing thirteen decks of heroin onto the living room table. The police seized the heroin. Trooper Castle entered the residence as it was being secured and applied for a search warrant. After obtaining the warrant, he returned and

---

[1] The officer's first name does not appear in the record.

conducted a walk-through of the residence with another trooper and recovered four firearms, including an assault firearm.

Defendant filed a motion to suppress at which he testified on his own behalf. His testimony was essentially that he was in his upstairs bedroom getting his daughter ready for school when the police raided the home. He denied ever being outside the house on the morning of the arrest. He denied exchanging drugs for money at his residence. He acknowledged that he was served with a search warrant while he was at police headquarters at approximately 4:10 p.m. the same day.

Two witnesses testified on behalf of the defense. Davontane Jenkins testified that he was on his porch, next door to the Walnut Street address for approximately one-half hour before the police arrived. He denied seeing Earl on his porch or in front of the Walnut street address at any time up until the police arrived. Jenkins' testimony was ambiguous regarding whether he actually resided next door on the date of the arrest.

Shatera Smith also testified. She indicated she was the girlfriend of Raymond Barker, another resident of the house, and stayed in Barker's room the night before the arrest. On direct examination, she testified Earl was in his bedroom at the time of the arrest. On cross-examination, she admitted she had never left

Barker's room prior to the police arriving and the door to the room had been closed.

The court denied the motion to suppress, finding Trooper Castle's testimony on behalf of the State credible. The court found that Earl was outside his residence when the police arrived and ran inside where he discarded bags of heroin onto a living room table. The court found the search warrant was not based upon information known to be false or with reckless disregard for the truth.

Earl ultimately entered conditional guilty pleas to third-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5a)(1); and second-degree unlawful possession of an assault firearm, N.J.S.A. 2C:39-5(f). The remaining counts of the indictment were dismissed.

On appeal, Earl presents the following arguments for our consideration:

POINT I

> THE MOTION COURT COMMITTED REVERSIBLE ERROR IN DENYING [DEFENDANT'S] MOTION TO SUPPRESS EVIDENCE.
>
> A. The Officers' Warrantless Conduct Violated [Defendant's] Constitutional [sic] Right to Be Free of Unreasonable Searches and Seizures.
>
> > (i) The Officers Lacked Probable Cause to Arrest [Defendant].

(ii) The Officers' Entry Into the Home Did Not Fall Within the Purview of the Hot-Pursuit Doctrine Because the Exigency Was Police-Created.

B. The Factual Predicate Underlying the Motion Court's <u>Franks v. Delaware</u> and <u>State v. Smith</u> Analysis was Flawed. Therefore, this Court Should Remand the Matter for Reconsideration.

We consider the court's determination that the warrantless search of defendant and seizure of heroin from his residence were lawful. The Fourth Amendment of the United States Constitution and Article 1, paragraph 7 of the New Jersey Constitution guarantee the right "of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" <u>U.S. Const.</u> amend. IV; <u>N.J. Const.</u> art. I, § 7.

As the United States Supreme Court has acknowledged, "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." <u>United States v. United States Dist. Court</u>, 407 <u>U.S.</u> 297, 313, 92 <u>S. Ct.</u> 2125, 2134, 32 <u>L. Ed.</u> 2d 752, 764 (1972). Accordingly, it is well established that "searches and seizures inside a home without a warrant are presumptively unreasonable," <u>Payton v. New York</u>, 445 <u>U.S.</u> 573, 586, 100 <u>S. Ct.</u> 1371 1380, 63 <u>L. Ed.</u> 2d 639, 651 (1980), and hence "prohibited by the Fourth Amendment, absent probable cause and exigent circumstances." <u>Welsh v. Wisconsin</u>, 466 <u>U.S.</u>

740, 749, 104 S. Ct. 2091 2097, 80 L. Ed. 2d 732, 743 (1984). State v. Hutchins, 116 N.J. 457 463 (1989). "Warrantless searches and seizures presumptively violate those protections, but '[n]ot all police-citizen encounters constitute searches or seizures for purposes of the warrant requirement[.]'" State v. Rosario, ___ N.J. ___, ___ (2017) (slip op. at 17) (citing State v. Rodriquez, 172 N.J. 117, 125 (2002)).

In Rosario, our Supreme Court noted "[i]n escalating order of intrusiveness upon a citizen's rights, three categories of encounters" between police and the public "have been identified by the courts: (1) field inquiry; (2) investigative detention; and (3) arrest." Ibid. The State has the burden of proving the existence of an exception by a preponderance of the evidence. State v. Amelio, 197 N.J. 207, 211 (2008), cert. denied, 556 U.S. 1237, 129 S. Ct. 2402, 173 L. Ed. 2d 1297 (2009).

Our review of a court's decision on a suppression motion is limited. We are required to uphold the factual findings of the trial court on a suppression motion if "those findings are 'supported by sufficient credible evidence in the record.'" State v. Elders, 192 N.J. 224, 243 (2007). We must defer to the trial court's findings, "which are substantially influenced by [the court's] opportunity to hear and see the witnesses and to have the

'feel' of the case, which a reviewing court cannot enjoy." Id. at 244 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

We first address defendant's argument that the police lacked probable cause to arrest him. "An arrest -- the most significant type of seizure by police -- requires probable cause and generally is supported by an arrest warrant or by demonstration of grounds that would have justified one. Rosario, supra, ___ N.J. at ___ (slip op. at 19). "Probable cause exists where 'the facts and circumstances within . . . [the officers'] knowledge . . . [are] sufficient in themselves to warrant a man of reasonable caution in the belief that 'an offense has been or is being committed[.]'" Brinegar v. United States, 338 U.S. 160, 175-76, 69 S. Ct. 1302, 1310-1311, 93 L. Ed. 1879, 1890 (1949) (citing Carroll v. United States, 267 U.S. 132, 162, 45 S. Ct. 280, 288, 69 L. Ed. 543, 555 (1925)(alteration in original)). This requires more than a "bare suspicion," State v. Goodwin, 173 N.J. 583, 598 (2002) (quoting State v. Burnett, 42 N.J. 377, 387 (1964), and more than an "inarticulate hunch[]", Terry v. Ohio, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889, 906 (1968), but less than the quantum of evidence necessary to convict. The probable cause standard is also more demanding than the "reasonable suspicion" standard applicable to investigative detentions under Terry, supra, 392 U.S. at 37, S. Ct. at 1888, 20 L. Ed. 2d at 915.

"[A]n anonymous tip, standing alone, inherently lacks the reliability necessary to support a reasonable suspicion because the informant's 'veracity . . . is by hypothesis largely unknown and unknowable.'" Rosario, supra, __ N.J. at __ (slip op. at 24) (quoting State v. Rodriquez, 172 N.J. 117, 127-28 (2002)).

Observations of police officers are generally regarded as highly reliable and sufficient to establish probable cause for warrantless searches, seizures and arrests. Our Supreme Court in State v. Moore, 181 N.J. 40, 47 (2004) and State v. O'Neal, 190 N.J. 601, 613 (2007) has upheld arrests, searches and seizures based upon observations of transactions akin to the facts here. Even where an officer does not see the nature of the items being exchanged, the observations can still support a finding of probable cause to arrest when the training and experience of the officer is properly credited. State v. Anaya, 238 N.J. Super. 31, 36 (App. Div. 1990), rev'd on other grounds.

In determining whether there is probable cause to arrest, courts use a totality of the circumstances test. The "test requires the court to make a practical, common sense determination whether, given all of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Moore, supra, 181 N.J. at 46 (quoting Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332, 76

L. Ed. 2d 527, 548 (1983)).  The factors the court should consider when applying this test are a police officer's common and specialized experience and evidence concerning the high-crime reputation of an area.  "[A]lthough factors considered in isolation may not be enough, cumulatively those pieces of information may 'become sufficient to demonstrate probable cause.'"  State v. Daniels, 393 N.J. Super. 476, 486 (2007) (quoting State v. Zutic, 155 N.J. 103, 113 (1998)).

Trooper Castle testified to his substantial experience in narcotics investigations.  He noted his participation in over fifty investigations involving narcotics trafficking, participation in the execution of search warrants where illegal narcotics have been seized, and work in an undercover capacity in numerous controlled dangerous substance (CDS) investigations.  In addition, he testified he had extensive experience interviewing confidential informants and conducting covert surveillance of subjects openly engaged in the sale of CDS, resulting in their arrest, prosecution, and conviction.  He also indicated he had extensive experience with the sale and distribution of CDS, and the techniques and methods used to sell and distribute those substances.  He further testified he had been a witness in various criminal prosecutions within the State of New Jersey resulting in convictions of defendants for violations of the New Jersey criminal

statutes. At the time of the arrest in question, he had been assigned to the Metro South Station in the City of Camden for four months and previously detached to Metro South during a previous assignment on the Tactical Patrol Unit during which time he had become familiar with many of the illegal drug sets within the City limits. He testified he was also familiar with the methods and jargon used by subjects engaged in the sale and distribution of illegal CDS, as well as the equipment, tools, and packaging materials used to distribute CDS.

In light of the record, we find that the motion judge correctly concluded there was probable cause to arrest. We come to that conclusion based upon the totality of the circumstances, including the anonymous tip, corroborated by the observations of a State police officer with extensive experience in narcotics and a knowledge of and familiarity with the vicinity in which the transactions were taking place.

We next address defendant's argument that there were no exigent circumstances which permitted the warrantless entry into his home. As noted by the State in its brief, "While defendant argued below no nexus existed because he was never outside, on appeal defendant has submitted: "Absent a closer nexus linking [defendant] to any illegal conduct, the officers lacked probable cause to arrest [defendant]." We find defendant's reliance upon

State v. Marsh, 162 N.J. Super. 290, 297 (Law Div. 1978), aff'd sub nom. and State v. Williams, 168 N.J. Super. 352, 358 (App. Div. 1979) misplaced.

In Marsh, a desk sergeant learned at 10:00 a.m. that a van containing stolen goods would be leaving a parking lot at 3:00 p.m. The police did not apply for a search warrant, and the van was seized when it left the parking lot at 4:30 p.m. The suppression motion was granted, the court noting,

> where police have probable cause, have no reason to believe or do not believe that a judge will disagree, have ample time to obtain a warrant before a known deadline of a specifically anticipated exigent circumstance will render the evidence unavailable, and they fail to apply for a warrant, their search based upon that probable cause, despite exigent circumstances, transgresses the Fourth Amendment as an unlawful usurpation of the judicial function to certify the probable cause and authorize the search by the issuance of a warrant.
>
> [Id. at 298.]

In Marsh, any exigency was created by the police who failed to obtain a warrant upon receipt of the information. Here, defendant caused the exigency by fleeing the police and discarding the heroin.

The question of whether exigent circumstances exist is to be determined, as it has always been, on a case-by-case basis with the focus on police safety and preservation of evidence. State

11

v. Pena-Flores, 198 N.J. 6, 11 (2009).  When a defendant retreats or causes some elements of a chase, and thereby causes a "hot pursuit" by the police, our Supreme Court has stated the situations may create a "realistic expectation that any delay would result in destruction of evidence", thus justifying a warrantless entry. State v. Bolte, 115 N.J. 579, 89 (1989) (citing United States v. Santana, 427 U.S. 38, 43, 96 S. Ct. 2406, 2410, 49 L. Ed. 2d 300, 305 (1976)).  Defendant appears to argue the exigent circumstances were created by the police.  Our Supreme Court has stated:

> We acknowledge . . . the potential for abuse inherent in the exigent-circumstance exception to the warrant requirement and . . . the concern that "the police not be placed in a situation where they can create the exception, because well-meaning police officers may exploit such opportunities without sufficient regard for the privacy interests of the individuals involved."
>
> [State v. Hutchins, 116 N.J. 457, 76 (1989) (quotation omitted).]

Whether the exigent circumstance "arose 'as a result of reasonable police investigative conduct intended to generate evidence of criminal activity' must also be taken into account." State v. De La Paz, 337 N.J. Super. 181, 196 (App. Div. 2001) (quoting State v. Alvarez, 238 N.J. Super. 560, 568 (App. Div. 1990), certif. denied, 168 N.J. 295 (2001)).  Police-created exigent circumstances which arise from unreasonable investigative

12

conduct cannot justify warrantless home entries." Ibid. (citing Hutchins, supra, 116 N.J. at 460). Determining whether exigent circumstances are police-created is a fact-finding issue that should be resolved by the judge who hears the testimony and has the opportunity to observe and evaluate the witnesses. Hutchins, supra, 116 N.J. at 476.

The pertinent factors include:

> the degree of urgency and the amount of time necessary to obtain a warrant; the reasonable belief that the evidence was about to be lost, destroyed, or removed from the scene; the severity or seriousness of the offense involved; the possibility that a suspect was armed or dangerous; and the strength or weakness of the underlying probable cause determination.
>
> [State v. Walker, 213 N.J. 281, 292 (2013) (quoting State v. Deluca, 168 N.J. 626, 632-33 (2001).]

"[T]he term 'exigent circumstances' is, by design, inexact. It is incapable of precise definition because, by its nature, the term takes on form and shape depending on the facts of any given case." State v. Cooke, 163 N.J. 657, 676 (2000).

The State argues this case does not involve the kind of deliberate conduct that courts have found to constitute police creation of exigent circumstances. We agree. Having determined there was sufficient evidence upon which to find probable cause to arrest, we find the court did not err in finding the police

properly pursued Earl when he retreated into his living room and thereafter observed the discarded heroin in plain view. The Fourth Amendment is not violated when police justifiably pursue a fleeing criminal into his [home] after the criminal has committed a serious crime in their presence. State v. Josey, 290 N.J. Super. 17, 31 (App. Div. 1996) (citing State v Jones, 143 N.J. 4, 14 (1995)).

Defendant argues finally that the issuance of the search warrant rested on Trooper Castle's materially false version of events and, therefore, a hearing was required pursuant to Franks v. Delaware, 438 U.S. 154, 171, 98 S. Ct. 2674, 2684, 57 L. Ed. 2d 667, 682 (1978) and State v. Smith, 212 N.J. 365, 420-21 (2012), cert. denied, __ U.S. __, 133 S. Ct. 1504, 185 L. Ed. 2d 558 (2013). When a "defendant makes a substantial preliminary showing" that the issuance of a search warrant was based upon materially false statements or omissions, a trial court is required to conduct a hearing at the defendant's request. Franks, supra, 438 U.S. at 155-56, 98 S. Ct. at 2676, 57 L. Ed. 2d at 672.

Pursuant to Franks, a defendant must meet two criteria to be entitled to a hearing: 1) the defendant must make a substantial showing that a false statement was knowingly and intentionally or with reckless disregard for the truth, included by the officer in the warrant affidavit; and 2) the allegedly false statements are necessary to a finding of probable cause. Ibid. Defendant bases

his argument on the testimony of his neighbor, Jenkins, who the court found not to be credible.  As argued by the State, the record shows Trooper Castle's testimony and his affidavit, which was the basis for the warrant, was tested against the testimony of the defense witnesses.  Based on that testimony the court found, as it would have in a <u>Franks</u> hearing, that defendant failed to make a substantial showing the search warrant was based upon statements known to be false, or made with reckless disregard for the truth.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1401-15T1