211 N.J. Super. 321 (1986)
511 A.2d 1197
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DOUGLAS DAVID CHAPPEE AND GLEN FULLER, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued June 9, 1986.
Decided June 19, 1986.
*322 Before Judges MORTON I. GREENBERG, J.H. COLEMAN and LONG.
Alan Silber argued the cause for appellant Glen Fuller (Silber & Rubin, attorneys).
*323 J. Barry Cocoziello argued the cause for appellant Douglas David Chappee (Podvey, Sachs & Catenacci, attorneys; J. Barry Cocoziello and H. Richard Chattman, on the brief).
Raymond S. Gurak, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General, attorney).
The opinion of the court was delivered by MORTON I. GREENBERG, P.J.A.D.
This matter comes on before this court on appeals by defendants Douglas D. Chappee and Glen S. Fuller from convictions and sentences entered on their pleas of guilty in these criminal cases. We consolidate the appeals for disposition in this opinion.
The proceedings started when defendants were indicted in Middlesex County for the following offenses: possession of a controlled dangerous substance, marijuana, N.J.S.A. 24:21-20(a)(4) (count one); possession of a controlled dangerous substance, methaqualone, N.J.S.A. 24:21-20(a)(1) (count two); possession of a controlled dangerous substance, cocaine of which more than 3.5 grams was free base, N.J.S.A. 24:21-20(a)(2) (count three); possession of a controlled dangerous substance with intent to distribute, more than 3.5 grams of free base cocaine, N.J.S.A. 24:21-19(a)(2)[1] and N.J.S.A. 24:21-19(b)(2) (count four); and unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count five).
On July 2 and July 9, 1981, defendants moved for admission of counsel pro hac vice, Chappee seeking to have John Van Ness, a Colorado attorney, admitted and Fuller seeking to be represented by Keith Stroup, a member of the District of Columbia bar, and his partner, a Mr. Pritzler, a member of the Illinois bar, partners in a four person multi-state firm. Judge *324 Hamlin denied these motions, noting the difficulties in scheduling cases when out-of-state counsel are involved and the complications their admission could cause. Further, the judge considered that the nature of the case was such that in-state counsel could ably represent defendants.
On July 17, 1981 defendants moved (1) to suppress evidence recovered from the trunk of the car in which they were riding when arrested; (2) to dismiss part of the indictment based on an alleged unconstitutionality of the New Jersey statute classifying cocaine as a narcotic; (3) to dismiss the indictment by reason of an underrepresentation of women in the position of grand jury foreperson; (4) to sever count five of the indictment; (5) to dismiss the indictment because it contained multiplicious charges, and (6) for Judge Hamlin to recuse himself from hearing the suppression motion as he issued the warrant for the search. The judge at that time made no ruling on the first three motions but denied the last three.
After evidentiary hearings, Judge Hamlin denied defendants' motion to dismiss the indictment based on the allegation there had been discrimination against women in the position of grand jury foreperson on March 8, 1983 and denied the motion to suppress in a written opinion dated August 6, 1983. In denying the motion to dismiss Judge Hamlin pointed out that the duties of a foreperson are ministerial. The motion to dismiss the indictment on the grounds that cocaine was unconstitutionally classified as a narcotic was denied and that issue is not raised on this appeal.
Another significant pretrial proceeding related to a plea agreement offered to defendants providing for maximum incarceration of Chappee and Fuller of two years and six years respectively. Fuller accepted the offer immediately but Chappee hesitated. The State rescinded the offer before it was put on the record and before Chappee accepted or rejected it. Defendants subsequently moved to enforce the offer but on April 29, 1983 Judge Muscatello denied their motion.
*325 Chappee moved for a severance of his case from Fuller's. While this motion was initially granted, on the State's interlocutory appeal on leave granted we reversed and remanded the matter to the trial court for a hearing, at which the motion was denied.
Pursuant to a plea agreement, reserving to defendants the right to appeal from certain of the pretrial orders, on April 10, 1984 defendants pleaded guilty to count four of the indictment. On November 20, 1984, Fuller was sentenced to a term of 20 years and a fine of $25,000 and on March 18, 1985 Chappee was sentenced to a term of seven years and a $5,000 fine. The remaining counts were dismissed.
Defendants appeal raising the following issues. Chappee asserts:
(1) The consent to search the trunk, sought during custodial interrogation, was invalid under the state and federal constitutions because no Miranda warnings or other advisement of the right to counsel and the consequences of the consent were given.
A. Defendants were in custody and subjected to custodial interrogation at the time consent to search was sought.
B. The failure to administer Miranda warnings prior to the custodial interrogation in which consent was sought invalidated the purported consent.
1. Miranda warnings must precede a request for consent.
2. Regardless of whether Miranda warnings are per se a prerequisite to a valid consent, where consent is obtained as the tainted and derivative fruit of a Miranda violation, the consent is invalid and the product of the ensuing search must be suppressed.
C. Under the New Jersey Constitution, Article I Paragraph 7, a consent during custodial interrogation is valid only if preceded by warnings adequate to insure an effective waiver and relieve the compulsion inherent in custodial interrogation. These must include advisements of the right to counsel and the consequences of consent.
(2) The conduct of the hearing on the motion to suppress was prejudicially erroneous, and a remand for a new hearing on the motion is required.
A. The preclusion of defendants' proffered expert testimony on the issue of defendant Fuller's lack of capacity in the circumstances to give a voluntary and knowing consent was prejudicially erroneous.
B. The judge presiding at the motion to suppress erred in failing to disqualify himself, since he had issued the search warrant after a testimonial hearing at which he passed on the credibility of one of the State's key witnesses and determined one of the central facts at issue on the motion.

*326 (3) The State's withdrawal of the plea bargain violated New Jersey law and policy; the State falsely induced Chappee and Fuller to waive their constitutional rights; the precedent will cause plea negotiations to become unworkable.
(4) The arbitrary denial of counsel of choice violated defendants' Sixth Amendment rights.
(5) Discrimination against women in the selection of grand jury forepersons constitutes a constitutional violation.
(6) Denial of Chappee's motion for a severance constituted a prejudicial abuse of discretion.
Fuller claims:
(1) The consent to search the trunk, sought during custodial interrogation, was invalid under the state and federal constitutions because no Miranda warnings or other advisement of the right to counsel and the consequences of the consent were given.
(2) The conduct of the hearing on the motion to suppress was prejudicially erroneous, and a remand for a new hearing on the motion is required.
(3) The State's withdrawal of the plea bargain violated New Jersey law and policy; the precedent will cause plea negotiations to become unworkable.
A. Informal plea bargains are enforced on several different theories.
1. Introduction: the importance of the plea bargain.
2. Federal courts will enforce a plea bargain in the case of a federal constitutional infraction.
3. Plea bargains must be enforced in cases of partial performance or detrimental reliance.
4. Federal courts enforce plea bargains under their supervisory powers.
5. State courts use their supervisory powers to enforce informal plea bargains and other agreements.
B. The New Jersey Constitution, rules, and case law all require that the State be held to a high standard of conduct.
1. The New Jersey Constitution provides greater protection to the individual than does the federal constitution.
2. The New Jersey plea bargain model.
C. The State's actions violate the New Jersey rules aimed at fairness and judicial efficiency.
1. The State promised to leave the plea offer open.
2. The State has no `plausible reason' for its change of position.
3. Failure to place the plea on the record does not void the State's commitment.
4. To allow arbitrary withdrawal of a plea offer legitimizes abuse of the plea bargain model.
D. Inability to rely on the State makes the plea bargain model unworkable.
1. Defense counsel will be forced to weigh the wrong factors.
2. Reliance is necessary for the plea bargain model to work.

*327 (4) The arbitrary denial of counsel of choice violated appellants' Sixth Amendment rights.
(5) Discrimination against women in the selection of grand jury forepersons constitutes a constitutional violation.
(6) The court's reasons for Fuller's sentence were unsupported by the record; the prosecutor's conduct violated the plea agreement; and the sentence was excessive.
A. The court's reasons for imposing the sentence are unsupported by the record.
1. Fuller, a courier, was erroneously sentenced as a principal.
a. Substantive error.
b. Procedural error.
2. The court's evaluation of aggravating and mitigating factors is unsupported by the record.
a. Mitigating factors.
1. Fuller's conduct neither caused nor threatened serious harm.
2. Fuller did not contemplate that his conduct would cause harm.
3. Community service.
4. Circumstances unlikely to recur and unlikely to commit another crime.
5. Likely to respond to probationary treatment.
6. Excessive hardship.
7. Willingness to cooperate with law enforcement authorities.
8. Miscellaneous mitigating factors.
b. Aggravating factors.
1. The nature of the offense.
2. Whether the defendant will commit another offense.
3. Organized criminal activity.
4. Deterrence.
B. This court should modify Fuller's sentence.
C. The prosecutor's conduct violated the terms of the plea agreement.
The circumstances giving rise to the arrest and search and seizure, developed at the hearing on the motion to suppress, are not complicated and indeed are quite typical. At approximately 4:30 a.m. on November 14, 1980 State Troopers Raymond Chintal and Guy Madison were on patrol on the New Jersey Turnpike. As they were pulling out of a service area, they observed a Pontiac automobile with Florida license plates and a radar detection device on the front dashboard speeding by. The troopers followed the car, clocking it at 65 miles per hour. The officers pulled the car over and then exited their vehicle with Chintal approaching the driver's side of the Pontiac and *328 Madison approaching the passenger side. At Chintal's request the driver, Chappee, produced his drivers license but he was unable to show a registration for the vehicle. Chappee then woke Fuller, who had been sleeping in the back seat. Fuller leaned over the front seat and unsuccessfully searched in the glove compartment for the registration.
Madison then motioned for Fuller to roll down the passenger side window and as he did so Madison smelled marijuana smoke and signalled to Chintal. While Fuller was searching for the registration, Chintal noticed that Chappee seemed "very nervous" with his hand movements being "very flighty." Consequently Chintal requested defendants to exit the vehicle. After he patted Chappee down and directed him to the rear of the car, Chintal shined his flashlight into the interior of the car and observed a partially burnt marijuana cigarette on the mat in front of the driver's seat.
Chintal then looked under the driver's seat for weapons and approached Chappee with the "roach." Though he cautioned Chappee that he need not answer, Chintal asked him if the car contained any more marijuana. At about the same time, Fuller was at the rear of the car searching for the registration in an attache case he had carried from the rear seat. Fuller appeared to the officers as "cocky" or arrogant and he was using profanity. While Fuller continued to search for the registration, Chappee paced on the highway shoulder until the officers requested him to sit down.
Inasmuch as Fuller's search had not yielded the registration, Chintal asked him if it could be in the trunk. Fuller responded that it might be and, according to Madison, stated he had nothing to hide and would find the registration. Officer Madison retrieved the car keys from the ignition, and as they were handed to Fuller, Chintal advised him that under State v. Johnson[2] he could refuse consent to open the trunk. Fuller, *329 however, consented and when he opened the trunk, Chintal observed several garment bags, a tool box and a canvas bag. According to Chintal, Fuller began to search among the boxes for the registration and as he opened a Hamilton Beach blender box, Chintal saw the corner of a clear plastic bag which he believed contained marijuana. At this point Chintal left the suspects and returned to the patrol car to get a consent to search form. Madison testified that as Fuller searched among the boxes his hand somehow caught the bag Chintal had observed and the bag, which did, in fact, contain marijuana, "popped up, maybe a foot in the air, and it landed back in the trunk and I just picked it up."
Madison testified, however, that Chintal was present during this incident and left to get the consent form only after the bag had popped out of the box. Madison stated he later learned from Chintal that Chintal had observed a different plastic bag and had left to retrieve a consent form. In any event, Madison testified that Fuller was "startled" at the sight of the exposed marijuana and stated that friends who had borrowed the car in Florida must have left it in the trunk. Fuller then closed the trunk, handed the keys to Chappee, yelled that they should get out, and the two men ran to the right side of the car. According to Madison, as Fuller slid behind the steering wheel he jumped on top of him. As Chappee was trying to get the keys in the ignition, Officer Chintal arrived and pulled Chappee from the vehicle. After the two tumbled down an embankment, Chintal was able to subdue and handcuff Chappee. Officer Madison restrained and handcuffed Fuller. The suspects were arrested and put in the patrol car.
According to Fuller, he and Chappee had been driving for 20 hours from Florida. He had taken a Quaalude 30-40 minutes before he had been stopped and had smoked a half joint of marijuana 10 minutes after taking the Quaalude. After being asked to exit the car he produced what he thought was the registration but which Madison said was only a "dealers tag." Fuller admitted that Chintal, in asking if the car contained *330 other contraband or if the registration could be in the trunk, informed him of his right to consent to a search or refuse consent, and to stop the search at any time. Fuller also testified that Chintal informed him that should the search disclose contraband he and Chappee would be arrested. However, according to Fuller, Madison stated that regardless of whether Fuller consented he would open the trunk. Fuller testified that he did not consent to the search and it was Madison who opened the trunk. According to Fuller, after the trunk was opened he began to move boxes around in the trunk in an effort to show the police there was no contraband in the car, and to avert their attention from a box which contained marijuana. However, Madison began to examine the contents of the trunk, and upon opening one box stated "what's this"? at which time Chintal left for the police car. Fuller stated that Madison then punched his fist through another box and started coming up with a bag of cocaine, and it was then that he and Chappee attempted to escape.
After defendants were arrested they were taken to the State Police barracks in New Brunswick and their automobile was impounded. Defendants were given Miranda warnings and Fuller signed a written consent form to search his car, although he sought to invalidate the document by printing a notation indicating the trunk had already been searched. As a result of statements made by Fuller after he received his rights indicating his car contained cocaine, marijuana and a can of mace, Chintal and another trooper obtained a search warrant from Judge Hamlin. In the subsequent search of the trunk of the vehicle, numerous clear plastic bags containing cocaine and approximately one pound of marijuana were found. In the interior of the vehicle the officers found eight suspected Quaaludes, smaller quantities of marijuana and a can of mace. Eventually it was determined that in excess of five pounds of cocaine was recovered.
In his written opinion denying defendants' motion to suppress, Judge Hamlin found that the officers had legal grounds *331 for originally stopping the Fuller vehicle, the roach retrieved by Chintal from the front seat was in plain view, defendants received adequate warnings under State v. Johnson and Fuller consented to a search of the trunk. The judge further concluded that the marijuana the officer observed in the trunk was also in plain view after the trunk was opened and, finally, the judge held that the officers had probable cause to search the entire vehicle while detaining defendants on the turnpike regardless of whether valid consent to search was given.
Extensive hearings were also held on defendants' motion to dismiss the indictment based on the exclusion of women from the position of grand jury foreperson. At these hearings evidence was developed showing how forepersons are selected and describing their functions. The order of March 8, 1983 denying the motion to dismiss was the product of these hearings.
We deal initially with the court's refusal to enforce the plea agreement, and reject defendants' contentions in this regard. In State v. Antieri, 186 N.J. Super. 20, 25 (App.Div. 1982), certif. den. 91 N.J. 546 (1982), we would not accept an argument that the trial court erred in not specifically enforcing a plea agreement which was offered and accepted, but later withdrawn by the State. The defendant's position in Antieri was stronger than defendants' positions here as there the defendant entered his plea of guilty before the prosecutor withdrew from the agreement. Id. at 23. Here the pleas of guilty were not entered on the record before the State withdrew its offer. Finally, we point out that defendants were not prejudiced in asserting any defense by the State's change in position.
In any event the plea agreement could not be effective unless approved by the judge. Thus the most relief defendants could obtain on this point would be a remand to ascertain if the judge would accept the agreement. We, of course, may exercise original jurisdiction to complete the determination of the matter. *332 R. 2:10-5. We do not hesitate to say that even if we found that the prosecutor should not have been allowed to withdraw from the agreement instead of remanding to the trial judge to determine if he would accept it, we would exercise original jurisdiction and reject it. We are, after all, in a position as favorable as the trial judge to pass on the reasonableness of the agreement, as all the facts of the case are before us. It is obvious that for the gravity of the offense involving the transportation of massive amounts of cocaine, the offer was far too lenient. Indeed, we are shocked that it could have even been contemplated that defendants could have been given such short sentences for their grave offense.
Defendants' argument for relief based on underrepresentation of women as Middlesex County grand jury forepersons is predicated on the fact that while the 52 grand juries selected in Middlesex County between January 1, 1976 and April 29, 1981 were approximately equally divided between men and women, 49 men and three women were selected as forepersons. In passing on this contention we note that clearly there was no intentional discrimination against women. Judge John C. Demos, now deceased but Middlesex County Assignment Judge during the time the 52 grand juries were selected, testified that he had never used race or sex to exclude people from the position of foreperson. Rather, he made his selection from the grand jurors on the basis of his observations of them and his review of questionnaires indicating their sex, age, address and occupation. Although there were no specific criteria for selection of forepersons, Judge Demos looked for people whom he believed would have skill in communication and who may have administrative or supervisory experience. Judge Demos also made it his practice to select a woman as either foreperson or deputy foreperson and to have a male or female black person in one of those positions.
In passing on defendants' contentions with respect to forepersons, we recognize that in a purely statistical sense, women *333 have been underrepresented in that capacity. We do, however, point out, although we do not regard this circumstance as controlling, that we are unable to see the slightest prejudice to defendants by reason of this underrepresentation as there is absolutely no basis in the record to conclude that defendants, who were caught with over five pounds of cocaine, were more likely to be indicted by a grand jury with a male rather than a female foreperson. In any event, the record fully supports the judge's conclusion that the duties of the foreperson are ministerial. See R. 3:6-4. In view of all the circumstances, we conclude that defendants' contentions that their rights to due process and to an impartial grand jury have been violated because of the alleged discrimination in selection of forepersons in Middlesex County is without merit. See Hobby v. United States, 468 U.S. 339, ___, 104 S.Ct. 3093, 3095, 82 L.Ed.2d 260, 265-266 (1984).
Defendants assert that when they were detained and questioned on the turnpike they were in custody and thus they should have been given the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), before they were requested to consent to open the trunk. In their view the police action of confronting them with the marijuana roach was likely to elicit an incriminating response and was the functional equivalent of express questioning. We disagree. As was stated in Hubbard v. Jeffes, 653 F.2d 99, 101-102 (3 Cir.1981):
The absence of Miranda warnings does not vitiate consent to a seizure of personal property, because the Miranda protections are addressed to constitutional rights that are distinct from Fourth Amendment rights. Solicitude for individual privacy is the central thrust of the Fourth Amendment. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Privacy rights must be balanced, however, against the interest of the community `in encouraging consent [to a search], for the resulting search may yield necessary evidence of the solution and prosecution of crime, evidence that may insure that a wholly innocent person is not wrongfully charged with a criminal offense.' Schneckloth [v. Bustamonte,] supra, 412 U.S. [218] at 243, 93 S.Ct. [2041] at 2056 [, 36 L.Ed.2d 854.] Inasmuch as the integrity of the fact-finding process may be enhanced by admitting evidence recovered from a search or seizure, the *334 Supreme Court has not required a stringent standard for measuring voluntariness in the Fourth Amendment context. As the Court noted in Schneckloth, in refusing to impose the `knowing and intelligent waiver' standard, `almost without exception, the requirement of a knowing and intelligent waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial.' 412 U.S. at 237, 93 S.Ct. at 2052. The Miranda rights implicate the reliability of the truth determining process, because they apply in an inherently coercive situation and they protect the right to counsel and the privilege against self-incrimination. Knowledge of the right to be assisted by counsel and to remain silent, however, has little bearing on the voluntariness of a consent to a search.
We further point out that in State v. DeLorenzo, 210 N.J. Super. 100, decided 1986, we held that Miranda warnings need not be given in a drunk driving situation before the defendant is asked to give a breath sample as the taking of the sample is nontestimonial. See also Cody v. Solem, 755 F.2d 1323, 1330 (8 Cir.1985), cert. den. ___ U.S. ___, 106 S.Ct. 104, 88 L.Ed.2d 84 (1985); United States v. Ritter, 752 F.2d 435, 438-439 (9 Cir.1985).
There was no error in the court's discretionary decision under R. 1:21-2 to deny admission to out-of-state counsel pro hac vice. While obviously the Sixth Amendment guarantees criminal defendants the right to assistance of counsel, it does not assure them the absolute right to the counsel of their choice. Davis v. Stamler, 650 F.2d 477, 479 (3 Cir.1981). So long as the bar of this State is able to provide effective counsel, there is no constitutional right to select an attorney who is not a member of the New Jersey bar. State v. Kavanaugh, 52 N.J. 7, 18 (1968), cert. den. sub nom. Matzner v. New Jersey, 393 U.S. 924, 89 S.Ct. 254, 21 L.Ed.2d 259 (1968). Furthermore, it has been held that:
[the risk that] the presence of out-of-state counsel might hinder the orderly processing of the case is a sufficient countervailing state interest to justify the court's decision not to grant counsel of defendant's choice.
Williams v. Nix, 751 F.2d 956 (8 Cir.1985), cert. den. ___ U.S. ___, 105 S.Ct. 2681, 86 L.Ed.2d 699 (1985). Here Chappee sought admission for John Van Ness, a Colorado attorney, and Fuller sought admission for Keith Stroup, a member of the District of Columbia bar, and a Mr. Pritzler, a member of the *335 Illinois bar. The trial judge noted the difficulties in scheduling criminal cases when all attorneys are members of the New Jersey bar, and believed the problem would be exacerbated by admitting counsel in this case. The court further believed that the issues presented in the case could be ably handled by local counsel. Inasmuch as the proposed attorneys were from varied and distant geographic locations, the judge certainly did not abuse his discretion in denying defendants' motions.
We also point out the following. We have given this case an intensive review. While we do not suggest that the absence of discernable prejudice from denial of defendants' motions for admission of counsel pro hac vice in itself precludes defendants from obtaining relief by reason of the denial, we nevertheless think it appropriate to state that from our study of the record, the briefs on appeal and observation of defendants' attorneys at oral argument, it is clear defendants have received extremely competent representation both in the trial court and here. Indeed we are satisfied that beyond any doubt even if defendants had been represented by the attorneys denied admission they could not have received more competent representation or a better result. We point out that defendants almost asked to be arrested. They were speeding on the turnpike in the early morning hours with marijuana in plain view. Further, they did not even have proper papers for the car. The case against them was overwhelming and their guilt clear beyond doubt. Yet skilled counsel has raised every conceivable defense on their behalf and has turned what should have been a routine case into a massive and protracted struggle. The trial judge's anticipation that New Jersey counsel would ably conduct the defense has been vindicated.
We have carefully considered all other issues raised and have determined they are clearly without merit. R. 2:11-3(e)(2). We note that at oral argument Chappee's attorney, who represented he had his client's consent to do so, withdrew point VI of his brief relating to denial of the severance motion.
Affirmed as to both defendants.
NOTES
[1] The correct section is N.J.S.A. 24:21-19(a)(1).
[2] 68 N.J. 349 (1975).