**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0845-22

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JOSE E. RODRIGUEZ,
a/k/a JOSE RODRIGUEZ,

    Defendant-Appellant.

_____

> Argued December 12, 2024 – Decided February 6, 2025
> Resubmitted February 20, 2025 – Decided March 11, 2025
>
> Before Judges Natali, Walcott-Henderson, and Vinci.
>
> On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 18-01-0013.
>
> S. Emile Lisboa IV argued the cause for appellant (Galantucci & Patuto, attorneys; S. Emile Lisboa IV, on the brief).
>
> Leslie-Ann M. Justus, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Leslie-Ann M. Justus, of counsel and on the brief).

PER CURIAM

This matter returns to us after a remand to the Law Division.  State v. Rodriguez, No. 0845-22 (App. Div. Feb. 6, 2025) (slip op. at 10).[1]  On remand, the court reissued its statement of reasons with respect to one of the orders under review.  Having considered these arguments against the record and applicable legal principles, we affirm in part and remand in part for resentencing.

The operative facts and procedural history are set forth in our prior opinion and need not be restated herein.  See id. at 2-9.  Defendant appeals from an October 21, 2022 judgment of conviction entered after a jury found him guilty of first-degree possession with intent to distribute marijuana, N.J.S.A. 2C:35-5(a)(1) and 2C:35-5(b)(10)(a); third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1); and fourth-degree possession of marijuana, N.J.S.A. 2C:35-10(a)(3).  The court imposed an aggregate twelve-year sentence.  Defendant also appeals from various pre-trial orders, including an order denying his motion to suppress evidence of marijuana and cocaine and his statements made to police

_____

[1]  Our February 6 opinion inadvertently omitted Judge Vinci as a member of the panel. A correction letter has been issued.

following his arrest.[2]

Consistent with our instructions on remand, the court provided an amended statement of reasons, dated February 19, 2025, denying defendant's motion for reconsideration of its January 14, 2020 order denying defendant's motion to suppress.

On appeal, defendant raises the following points for our consideration:

POINT I

ALL EVIDENCE, BOTH PHYSICAL AND VERBAL, SHOULD HAVE BEEN SUPPRESSED AS IT WAS OBTAINED IN VIOLATION OF [DEFENDANT'S] RIGHTS UNDER THE FOURTH AND FIFTH AMENDMENTS, AND NEW JERSEY'S BROADER FIFTH AMENDMENT ANALOGUE.

A. The motion court erred in failing to suppress the evidence obtained from the illegal stop and search of the vehicle being operated by Maria Stout [(Stout)] in the State of Illinois.

B. The police failed to seek or obtain an anticipatory search warrant for the "controlled delivery" in New Jersey of the marijuana seized in Illinois.

---

[2] This decision implicates the orders and reasoning of two judges: the first motion judge who entered the January 14, 2020 order; and the second motion judge who entered the December 10, 2021 order.

A-0845-22

C.  The trial judge, who found that the police had violated [defendant's] Miranda[3] rights at the time of his arrest, erred in failing to consider and apply the "fruit of the poisonous doctrine" in her denial of [defendant's] [m]otion for [r]econsideration by failing to suppress all evidence derived from the evidential taint of that violation.

POINT II

THE COURT ERRED IN SENTENCING [DEFENDANT] BY FAILING TO MERGE [DEFENDANT'S] CONVICTION [FOR] POSSESSION OF MARIJUANA WITH HIS CONVICTION FOR POSSESSION WITH INTENT TO DISTRIBUTE MARIJUANA AND BY APPLYING AGGRAVATING FACTORS N.J.S.A. 2C:44-1(A)(1), (3) AND (9).

I.

We first address defendant's argument the court erred in denying his motion to suppress all physical evidence—marijuana and cash recovered following his arrest—and his verbal statements made to police.

Our review of a trial court's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009).  Deference is accorded "to the trial court's factual findings that are supported by sufficient credible evidence in the record and will not disturb those findings unless they are 'so clearly mistaken

---

[3]  Miranda v. Arizona, 384 U.S. 436 (1966).

that the interests of justice demand intervention and correction.'" State v. Rivas, 251 N.J. 132, 152 (2022) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). "An appellate court owes no deference, however, to 'conclusions of law made by lower courts in suppression decisions'" and reviews such decisions de novo. State v. A.M., 237 N.J. 384, 396 (2019) (quoting State v. Boone, 232 N.J. 417, 426 (2017)). Moreover, a reviewing court is not bound by the trial court's legal conclusions regarding "the validity of the defendant's waiver of constitutional rights or the voluntariness of a confession." Rivas, 251 N.J. at 152 (citing State v. O.D.A.-C., 250 N.J. 408, 425 (2022)).

We review the denial of a motion for reconsideration for abuse of discretion. State v. Puryear, 441 N.J. Super. 280, 294 (App. Div. 2015). "Reconsideration is not to be granted lightly and the grounds for reconsideration are generally limited. The proper object of reconsideration is to correct a court's error or oversight" on the original motion. Ibid. (citing Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010)). A trial court abuses its discretion "when a decision is 'made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis.'" Brunt v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 357, 362 (App. Div. 2018) (quoting Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super.

378, 382 (App. Div. 2015)).

Defendant asserts suppression of all physical and verbal evidence was warranted since the evidence was obtained in violation of his Fourth and Fifth Amendment rights. More particularly, he asserts: (1) the motion courts erred in failing to suppress the evidence obtained from the warrantless search of Stout and Lonnie Jacobs (Jacobs), the passenger's truck in Illinois; (2) the warrantless search of his property and seizure of evidence following the controlled delivery of marijuana in New Jersey does not fall under any exception to the warrant requirement-because police failed to obtain an anticipatory search warrant and; (3) the court failed to consider and apply the "fruit of the poisonous tree" doctrine to suppress all evidence obtained following his arrest after determining police violated his Miranda rights by failing to Mirandize him at the time of his arrest. We address these arguments seriatim.

A.

As to defendant's first point challenging the constitutionality of the Illinois stop, the first motion judge found there was probable cause to stop and search the vehicle under Illinois law and concluded, consistent with State v. Evers, 175 N.J. 355 (2003), no purpose would be served by applying New Jersey's constitutional standards to people and places over which the sovereign power of

6

the state had no power or control.  Id.  The first motion judge further concluded, "in a case where an out-of-state enforcement officer does not even know that New Jersey has an interest in the matter, New Jersey law cannot apply."

The first motion judge reasoned that operating a truck without mud flaps was a violation of Illinois law, and Illinois State Trooper Sean Veryzer's (Trooper Veryzer) observations of several duffel bags in the back of the truck coupled with Stout's nervous demeanor as the officer was conversing with her gave rise to probable cause supporting the search of the truck.  The first motion judge reached this determination based on Illinois law and People v. White, 770 N.E.2d 261 (Ill. App. Ct. 2002) (holding Miranda warnings are not needed to ask a driver where he got items in the back of his truck that the trooper suspected were stolen).

We reject defendant's argument the court erred in failing to apply New Jersey law substantially for the reasons stated in the first motion judge's thorough and well-reasoned written opinion on this issue.  And, even though we review the court's decision on choice of law de novo, State v. Hubbard, 222 N.J. 249, 263 (2015), based on the totality of the circumstances, we reach the same conclusion as the first motion judge:  officers had probable cause to stop the vehicle that was being operated by Stout and Jacobs for a mud flap violation.

A-0845-22

625 ILL. COMP. STAT. 5/12-710 ("It is unlawful for any person to operate any vehicle . . . unless such vehicle is equipped with rear fender splash guards . . . ."); Whren v. United States, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.").

We further conclude that following the lawful stop of the vehicle, there were sufficient facts to support the first motion judge's finding Trooper Veryzer had reasonable suspicion to support the K-9 sniff and probable cause to conduct the search of the vehicle following the positive alert from his K-9 partner. We reach these determinations based on Trooper Veryzer's testimony that as he approached the vehicle, he observed duffel bags in the bed of the vehicle and when asked about the bags, Stout repeatedly lied to him and appeared increasingly nervous. Furthermore, Trooper Veryzer testified that based on his experience and training two people driving cross-country in a truck owned by a third party with the proffered intent of picking up another truck in a distant state was consistent with the characteristics of prior drug traffickers he had encountered. Trooper Veryzer testified he also considered that Stout and Jacobs were travelling from Reno, which was a "gateway" city for illegal cannabis trade.

A-0845-22

Trooper Veryzer ran Stout's driver's license number and while awaiting the results, he walked his K-9 drug-sniff partner around the vehicle and the dog alerted to the presence of controlled dangerous substance (CDS) in the vehicle. According to Trooper Veryzer, he returned to his vehicle and obtained the results, showing that Stout had prior arrests for CDS. He then proceeded with the search of the vehicle and discovered eight duffel bags of marijuana underneath plywood.

The court found Trooper Veryzer's testimony to be credible, which we conclude is entitled to deference on appeal. Deference is particularly warranted where, as here, "the evidence is largely testimonial and involves questions of credibility." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998) (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Such findings are entitled to deference on appeal because it is the trial judge who "sees and observes the witnesses," thereby possessing "a better perspective than a reviewing court in evaluating the veracity of witnesses." Pascale v. Pascale, 113 N.J. 20, 33 (1988) (quoting Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)).

In light of Trooper Veryzer's credible testimony about his interactions with Stout and Jacobs, we conclude there is sufficient evidence in the record to support the court's finding there was probable cause to search the vehicle in

9

Illinois.  See Illinois v. Gates, 462 U.S. 213, 238 (1983) (wherein the Supreme Court examined the circumstances of a similar traffic stop of a car traveling from Florida on the basis of a detailed anonymous letter.  There, the Court stated, "we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations," and considered Florida's status as "well known as a source of narcotics and other illegal drugs" in addition to the circumstances which overlapped with those in the anonymous tip.).  Thus, we discern no error in the court's decision to deny defendant's motion to suppress the marijuana found as a result of Trooper Veryzer's search.

B.

Defendant next argues police failed to seek and obtain an anticipatory search warrant for the controlled delivery of marijuana despite having been informed by Stout and Jacobs that "delivery was to be made [to defendant] at an apartment complex" located in Old Bridge.

We are unpersuaded by defendant's argument law enforcement should have obtained an anticipatory search warrant based on their knowledge and involvement in the controlled delivery of marijuana to defendant.  Defendant offers no legal support for this proposition and his brief is replete only with general references to the standard necessary for a finding of probable cause.

10

Anticipatory warrants require the court "to determine (1) that it is now probable that (2) contraband, evidence of a crime, or a fugitive will be on the described premises (3) when the warrant is executed." United States v. Grubbs, 547 U.S. 90, 96 (2006). It is also well-settled "there is no requirement that the Government obtains a warrant at the first moment probable cause exists. The touchstone for determining the constitutionality of warrantless searches is one of reasonableness under the circumstances." State v. Bell, 195 N.J. Super. 49, 55 (App. Div. 1984) (internal citations omitted) (first citing Cardwell v. Lewis, 417 U.S. 583, 595 (1974); and then citing Delaware v. Prouse, 440 U.S. 648, 653-55 (1979) and State v. Bruzzese, 94 N.J. 210, 216-17 (1983)); see also State v. Foreshaw, 245 N.J. Super. 166, 173 (App. Div. 1991).

In Bell, police were surveilling an area known for narcotics trafficking and were informed by reliable informants that narcotics dealers would drive to New York to purchase heroin and come back to that area to sell it. 195 N.J. Super. at 52. Police observed two men and a woman leave that area by car and were later told by an informant that they had heroin when they returned. Ibid. Several days later, police observed a suspicious car in the targeted area and followed it to New York and back to Elizabeth where they stopped it and seized narcotics. Id. at 53-54. In that case, we reversed the court's order suppressing

A-0845-22

the evidence based on a finding that "any search warrant which might have issued would have been based not on present probable cause, but on probable cause that evidence of criminal conduct could be found at a specified future time." Id. at 54. We concluded "while an anticipatory warrant [was] permissible, it was not mandated" because from a review of the record, probable cause existed to believe "at the time the motor vehicle was seen coming back from New York City contraband was contained therein." Id. at 58. Critically, anticipatory warrants are "not required [in situations where] the police were justified in waiting until the drugs were on the premises before conducting the search." Id. at 56 (discussing State v. Patterson, 220 N.W.2d 235 (Neb. 1974)).

Here, Detective Peter Layng (Detective Layng) testified at the suppression hearing that when Stout and Jacobs arrived at New Jersey State Police Headquarters in Holmdel on the morning of March 1, 2017, they "hadn't finalized [their] plan" and at that point Jacobs "only knew [defendant as] this person that was receiving the drugs in New Jersey, identified as Stacks, [a] light-skin Hispanic male, five seven, two hundred and twenty pounds, glasses, no scars, marks or tattoos that were visible to him." Detective Layng further testified that the previous day when Jacobs had contacted defendant to push back the delivery to March 1, defendant confirmed he would meet with them on

12

March 1 at the apartment complex in Old Bridge. According to Detective Layng, at that time, law enforcement knew only that there was "a large apartment complex . . . but there was no . . . apartment number given. . . . Just that—th[e] address."

Based on this record, we discern no support for defendant's contention law enforcement officers had probable cause to obtain an anticipatory search warrant prior to defendant's meeting with Stout and Jacobs in the parking lot at the residence in Old Bridge. Up until that point, law enforcement officers knew defendant as "Stacks," which was presumably a nickname, and had a general description of his appearance, and a phone number, which Stout and Jacobs had used to contact him. With these limited facts, as the State points out, the police did not have probable cause to arrest defendant until he arrived at the meet-up location for the delivery and took possession of the duffel bags, which law enforcement knew contained marijuana. Thus, we conclude defendant's argument law enforcement was required to obtain an anticipatory warrant prior to the search of defendant is unavailing. Foreshaw, 245 N.J. Super. at 173.

C.

We next turn to defendant's argument that the second motion judge, who found police violated his Miranda rights at the time of his arrest, erred in failing

to consider and apply the "fruit of the poisonous tree doctrine" in her denial of defendant's motion for reconsideration. "Under the exclusionary rule, evidence obtained in violation of an individual's constitutional rights will be excluded as 'fruit of the poisonous tree.'" State v. Roman-Rosado, 462 N.J. Super. 183, 197 (App. Div. 2020) (quoting State v. Faucette, 439 N.J. Super. 241, 266 (App. Div. 2015)).

Defendant maintains that during the more than eight hours between his arrest and recorded confession, he "was continuously in the control of the police and subject to additional unrecorded questioning in his New Jersey apartment, in the car ride to . . . Queens . . . after [twenty-four] minutes of continuous un-Mirandized questioning both in the parking lot and in his apartment." He maintains that after his arrest, "in 'requesting' that [he] sign the consent to search forms, the police were making a 'request that [he] be a witness against himself.'" Defendant seeks suppression of all statements made from the point of his initial arrest.

In the second motion judge's oral decision on the April 5, 2021 Miranda motion, she found there were three separate periods of time when defendant was questioned or interviewed and separately addressed each period. The second motion judge explained the first period occurred around 2:00 p.m. when

14

defendant was first arrested and immediately thereafter when defendant was in his apartment with law enforcement officers. The judge considered the testimony of Detective Layng and Special Agent John Yoo credible and noted Detective Layng recalled one of the other police officers reading him his rights at the time of the arrest, and there was a notation in the detective's police report that defendant was read his rights at the time of his arrest. She also noted Detective Layng testified it was his usual course of practice to read Miranda rights prior to initiating an interrogation but when asked if he recalled, he testified that he did not.

Nevertheless, the second motion judge concluded the State failed to meet its burden of proving beyond a reasonable doubt defendant received Miranda warnings prior to, or at any point during this initial period of questioning, stating:

> [T]he standard is beyond a reasonable doubt and so, to the extent that there is some doubt as . . . to who did the Miranda warnings and exactly when, as it relates to this first period of time that we're talking about, that's a doubt that really has to be resolved in favor of the defendant. And so, with respect to this first period of time, the Court cannot find beyond a reasonable doubt that it's more likely than not —that's not the standard— that he was read his Miranda warnings as—at that time. I cannot make that finding based on the record before it.

15

The second motion judge determined defendant's statements during this initial period took place during a custodial interrogation, were unwarned, and thus inadmissible.

With respect to the second interrogation of defendant, which occurred at 10:45 p.m., the second motion judge found it was undisputed defendant had signed the <u>Miranda</u> card following Detective Layng's reading of the <u>Miranda</u> warnings. In addition, the interview was recorded. The second motion judge concluded defendant's statement during this period were admissible.

Addressing the third, unrecorded, statement given to law enforcement, where defendant asked Special Agent Yoo and Officer Mike Mintchwarner that it not be recorded, the second motion judge determined defendant's statements were inadmissible under <u>State v. Pillar</u>, 359 N.J. Super 249 (App. Div. 2003).[4] The second motion judge reasoned:

> Despite the lack of promises to the defendant and the [S]tate's contention that these statements were similar

---

[4] In <u>Pillar</u>, the officer processing the defendant asked if he wished to speak, and the defendant indicated that he was "guilty of some of the things on here . . . but not all of them." 359 N.J. Super at 269. The defendant asked the officer if he could say something "off-the-record" and, upon the officer's permission to do so, admitted the crime. <u>Ibid.</u> We found the defendant's "off-the-record" statement inadmissible because the officer's "acquiescence to hear an 'off-the-record' statement from a suspect presented an overwhelming enticement to admit criminal activity without fear of incarceration, and "clearly had the likelihood of stripping defendant of his 'capacity for self-determination.'" <u>Ibid.</u>

to proffers, the defendant's <u>Miranda</u> warnings ha[d] to be re-administered following his request for an off-the-record conversation. Particularly so because the [S]tate contends that these off-the-record statements can be used against him should the defendant become adverse to the state.

As the court in <u>Pillar</u> stated, an acquiescence to hear an off-the-record statement from a suspect, which the officer ought to know cannot be off the record, totally undermines and eviscerates the <u>Miranda</u> warnings. And this is the case even where the officer does not know what the[y] meant by off the record at the—as it was the officer's obligation to clarify what that statement meant. This defendant could not have validly waived his right to remain silent without such a clarification.

Further, as to defendant's consent to search his property, the second motion judge determined the issue turned on whether the consent to search was voluntarily given. Weighing the <u>State v. King</u> voluntariness factors, 44 N.J. 346, 352 (1965), the second motion judge found three of the <u>King</u> factors indicated involuntariness, but determined they did not render the consent given by defendant invalid because of the presence of two <u>King</u> factors indicating voluntariness. The second motion judge found persuasive the fact that defendant invited law enforcement into his apartment and signed a written consent form permitting "[p]olice and any other officer designated to assist, to conduct a complete search of" defendant's residences and "all containers both locked and

unlocked contained within"; defendant's car; and the lockbox.  The forms further

authorized

> the above member of the New Jersey State Police to remove and search any letters, documents, papers, materials, or other property[,] which is considered pertinent to the investigation, provided that [defendant is] subsequently given a receipt for anything which is removed.
>
> [Defendant has] knowingly and voluntarily given [his] written consent to the search described above.
>
> [Defendant has] been advised by [Detective Layng] and fully understand[s] that [defendant has] the right to refuse giving [his] consent to search and may depart if no other reason exists for detaining [him].
>
> [Defendant has] been further advised that [he] may withdraw [his] consent at any time for any reason and that [he has] the right to be present during the search at a location consistent with the safety of the trooper, [himself], and other motor vehicle occupants.
>
>   . . . .
>
> [Defendant] waive[d] [his] right to be present during the search.

"Implicit in the very nature of the term 'consent' is the requirement of

voluntariness."  Ibid.  Accordingly, "consent must be 'unequivocal and specific'

and 'freely and intelligently given.'"  Ibid. (quoting Judd v. United States, 190

F.2d 649, 651 (D.C. Cir. 1951)).  In King, our Supreme Court listed the

18

following non-exhaustive factors tending to indicate coerced consent:

> (1) that consent was made by an individual already arrested . . . (2) that consent was obtained despite a denial of guilt . . . (3) that consent was obtained only after the accused had refused initial requests for consent to search . . . (4) that consent was given where the subsequent search resulted in a seizure of contraband which the accused must have known would be discovered . . . and (5) that consent was given while the defendant was handcuffed . . . .

> [Id. at 352-53 (citations omitted).]

The King Court also listed the following factors indicating a defendant's consent was given voluntarily:

> (1) that consent was given where the accused had reason to believe that the police would find no contraband . . . ; (2) that the defendant admitted his guilt before consent . . . [and] (3) that the defendant affirmatively assisted the police officers . . . ."

> [Id. at 353 (citations omitted).]

In examining this issue, our Court acknowledged "[e]very case necessarily depends upon its own facts," and "the existence or absence of one or more of the above factors is not determinative of the issue." Ibid. And, the factors are simply "guideposts to aid a trial judge in arriving at [their] conclusion." Ibid.

We recognize two King factors extant in the record which indicate consent was voluntarily given and therefore the fruit of the poisonous tree doctrine is

19                                                                        A-0845-22

inapplicable. <u>Id.</u> at 353. First, defendant clearly knew a search of his car would reveal the bags of marijuana he obtained from the confidential informant. Second, defendant gave written consent to search his apartment, New York residence, BMW, and lockbox.

There is no dispute defendant was in custody at the time law enforcement arrested him in the apartment complex parking lot shortly after he took possession of the duffel bags from Jacobs and Stout. According to the undisputed testimony of Detective Layng, following his arrest, defendant invited the officers into his apartment so as to not "be out in the open," referring to the parking lot where the arrest took place.

In examining whether defendant needed to be Mirandized prior to consenting to a search of his apartment while in custody, we look to both state and federal precedent for guidance. "The privilege against self-incrimination, as set forth in the Fifth Amendment to the United States Constitution, is one of the most important protections of the criminal law." <u>State v. Presha</u>, 163 N.J. 304, 312 (2000) (citations omitted); U.S. Const. amend. V. In general, <u>Miranda</u> "warnings must be given before a suspect's statement made during custodial interrogation [may] be admitted in evidence." <u>Dickerson v. United States</u>, 530 U.S. 428, 431-32 (2000).

The Miranda Court "defined 'custodial interrogation' as questioning initiated by law enforcement 'after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.'" State v. O'Neal, 190 N.J. 601, 615 (2007) (quoting Miranda, 384 U.S. at 444).

> The absence of Miranda warnings does not vitiate consent to a seizure of personal property, because the Miranda protections are addressed to constitutional rights that are distinct from Fourth Amendment rights. Solicitude for individual privacy is the central thrust of the Fourth Amendment . . . Privacy rights must be balanced, however, against the interest of the community "in encouraging consent [to a search], for the resulting search may yield necessary evidence of the solution and prosecution of crime, evidence that may insure that a wholly innocent person is not wrongfully charged with a criminal offense."
>
> [State v. Chappee, 211 N.J. Super. 321, 333-34 (App. Div. 1986) (citations omitted) (alteration in original) (quoting Hubbard v. Jeffes, 653 F.2d 99, 101-02 (3d Cir. 1981)).]

A statement of consent to search by the person in custody is scrutinized under the Fourth Amendment, not the Fifth Amendment:

> In a [F]ifth [A]mendment context a defendant's statements, in and of themselves, present the potential constitutional evil. For purposes of the [F]ourth [A]mendment . . . it is an unreasonable search that is to be condemned, not the use of the defendant's statements proving consent to a search. A search and seizure produces real and physical evidence, not self-incriminating evidence. Our task under the [F]ourth [A]mendment is to test the reasonableness of a search

21

and exclude evidence procured unreasonably. . . . Therefore, <u>Miranda</u>'s <u>ratio decidendi</u> which was enunciated to strengthen the [F]ifth [A]mendment's function in preserving the integrity of our criminal trials should not be superimposed <u>ipso facto</u> to the wholly different considerations in [F]ourth [A]mendment analysis.

[<u>United States v. Stevens</u>, 487 F.3d 232, 242-43 (5th Cir. 2007) (citation omitted) (superseded on other grounds as stated in <u>United States v. Vasquez</u>, 899 F.3d 363, 372 (5th Cir. 2018)).]

Because requests for consent to search implicate Fourth Amendment considerations, such as safeguarding privacy and preventing unreasonable seizures, it cannot be considered an interrogation for purposes of the Fifth Amendment, which is designed to protect a person from answering "official questions put to him [or her] in any other proceedings, civil or criminal, formal or informal, where the answers might incriminate [them] in future criminal proceedings." <u>T.B. v. I.W.</u>, 479 N.J. Super. 404, 415 (2024) (quoting <u>Baxter v. Palmigiano</u>, 425 U.S. 308, 316 (1976)).

Both the first and second motion judges addressed whether defendant's unwarned statements in violation of <u>Miranda</u> required suppression of derivative physical evidence, seized by law enforcement. Relying on <u>Chappee</u>, N.J. Super. at 333-34, the first motion judge found there was "no definitive record of who [Mirandized] defendant" but the <u>Miranda</u> warnings "were not necessary prior to

receiving consent to enter and subsequently search [d]efendant's apartment, because the interests involved in [Miranda] . . . are fundamentally distinct from the interest of being free from unreasonable searches and seizures."  The first motion judge was persuaded by the Chappee Court's holding that courts have treated differently the Fifth Amendment right against self-incrimination, as protected by Miranda, from the Fourth Amendment right against unreasonable search and seizure.  Id. at 333.

Here, defendant gave written consent to search his car, apartment, and his other property by signing four separate consent to search forms provided by law enforcement officers after his arrest.  The evidence defendant seeks to have suppressed was derived from the searches resulting from his signed consent forms.  We are persuaded defendant's signed consent to the four searches was knowing and voluntary and he had the right to withdraw his consent.  We conclude defendant's consent was sufficient to conduct the searches.

Our Supreme Court in Hagans stated the "King Court factors are guideposts rather than rigid absolute authority."  State v. Hagans, 233 N.J. 30, 43 (2018).  Two King factors indicating voluntariness are present here:  (1) defendant admitted his guilt before giving consent; and (2) defendant affirmatively assisted the police officers by inviting them into his apartment.  44

23

N.J. at 352.  According to Detective Layng, defendant "had already indicated that he was going to cooperate, . . . we went from the courtyard, with his agreement, into the apartment."  And, when asked about defendant's demeanor following his arrest, Detective Layng further testified "he was a gentleman.  He was helpful."  He also described defendant as acting "professional."

Under these circumstances, we are satisfied defendant voluntarily consented to the searches of his residences and property, and any evidence seized as a result of his consent is not subject to exclusion as fruit of the poisonous tree.  Further, we find no abuse of discretion because there is sufficient credible evidence in the record to support the first motion judge's finding defendant's consent was voluntary despite any potentially coercive King factors.  Puryear, 441 N.J. Super. at 294.

## II.

Defendant next argues the court erred in various aspects of his sentence, including by failing to:  merge his first-degree conviction for possession with intent to distribute marijuana with his fourth-degree conviction for possession of marijuana; merge the fourth-degree possession of marijuana into the third-degree possession of cocaine; and properly apply aggravating factors N.J.S.A. 2C:44-1(a)(1), (the nature and circumstances of the offense, and the role of the

24

actor including whether or not it was committed in an especially heinous, cruel, or depraved manner), N.J.S.A. 2C:44-1 (a)(3) (the risk defendant will commit another offense), and N.J.S.A. 2C:44-1 (a)(9) (the need for deterring the defendant and others from violating the law). More particularly, defendant asserts the sentencing judge "did not explain why the possession with intent to distribute (not distribution itself) of 175 pounds of marijuana, . . . was . . . 'so heinous, cruel, or depraved' as to support application of this aggravating factor." And, that the court's application of mitigating factor seven—no prior history or criminal activity—was drastically in opposition to her finding of aggravating factor (a)(3), the risk of recidivism and the application of aggravating factor (a)(9).

Although the State maintains defendant was properly sentenced to a term of twelve years' imprisonment on his conviction for possession with intent to distribute marijuana, the State agrees the court should have merged defendant's convictions for third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1) and fourth-degree possession of marijuana, N.J.S.A. 2C:35-10(a)(3) into his conviction for possession with intent to distribute marijuana, N.J.S.A. 2C:35-5(b)(10)(a).

Appellate courts review sentencing determinations in accordance with a

deferential standard, and "must not substitute [their] judgment for that of the sentencing court." State v. Rivera, 249 N.J. 285, 297 (2021) (quoting State v. Fuentes, 217 N.J. 57, 70-74, (2014)). We must affirm the sentence unless (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not "based upon competent and credible evidence in the record"; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience." State v. Roth, 95 N.J. 334, 364-65 (1984). Stated another way, we may modify a defendant's sentence only when convinced the sentencing judge was clearly mistaken. State v. Jabbour, 118 N.J. 1, 6 (1990).

As a preliminary matter, we conclude the court erred by failing to have merged defendant's convictions for fourth-degree possession of marijuana into his conviction for possession with intent to distribute marijuana. See State v. Selvaggio, 206 N.J. Super. 328, 330 (App. Div. 1985) ("[C]onvictions for possession merge into . . . convictions for the simultaneous possession with intent to distribute the same substance.").

As to aggravating factor one, "the sentencing court reviews the severity of the defendant's crime, 'the single most important factor in the sentencing process,' assessing the degree to which defendant's conduct has threatened the

safety of its direct victims and the public." State v. Lawless, 214 N.J. 594, 609 (2013) (quoting State v. Hodge, 95 N.J. 369, 378-79 (1984)). "When it assesses whether a defendant's conduct was especially 'heinous, cruel, or depraved,' a sentencing court must scrupulously avoid 'double-counting' facts that establish the elements of the relevant offense." Fuentes, 217 N.J. at 74-75 (first citing State v. Yarbough, 100 N.J. 627, 645 (1985); and then citing State v. Kromphold, 162 N.J. 345, 353 (2000)). Aggravating factor one may properly be found "by reference to the extraordinary brutality involved in an offense," id. at 75 (citing State v. O'Donnell, 117 N.J. 210, 217 (1989)), or if "defendant's behavior extended to the extreme reaches of the prohibited behavior." Id. at 76 (quoting State v. Henry, 418 N.J. Super. 481, 493 (Law Div. 2010)). As the Court pointed out in Fuentes, aggravating factor one is usually reserved for those situations in which the defendant cruelly inflicts pain and suffering to the victim, in addition to causing death. Id. at 75 (collecting cases).

Here, the court found aggravating factor one because defendant "was responsible for placing a large amount of drugs into the stream of commerce." But, that fact does not support a finding that the offenses were "especially heinous, cruel or depraved." See N.J.S.A. 2C:44-1(a)(1). We are persuaded finding aggravated factor one amounted to double counting of an essential

element of the crimes, i.e., the possession of large amounts of CDS with and without intent to distribute.

Lastly, we reject defendant's contention the court improperly applied aggravating factor N.J.S.A. 2C:44-1(a)(3) "especially in light of [the court's] application of mitigating factor N.J.S.A. 2C:44-1(b)(9) (character and attitude make it unlikely [defendant] will commit another offense)." Defendant's argument lacks merit as there is nothing inherently conflicting or inappropriate in the court's consideration of defendant's lack of any criminal history, overwhelming support from his family, friends and members of the community, while concluding defendant was likely to commit another offense. State v. Dalziel, 182 N.J. 494, 505 (2005). Nevertheless, because the court failed to merge defendant's convictions and improper consideration of aggravating factor one as discussed above, we remand for the court to merge the fourth-degree possession of marijuana charge conviction into possession with intent to distribute marijuana and resentence defendant.

To the extent we have not specifically addressed any of defendant's remaining arguments, we deem them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed in part and remanded consistent with this opinion. We do not

A-0845-22

retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0845-22